In the Matter of Ronald ISLEY, Debtor.

Gerald H. GLINE, Trustee, Plaintiff,

v.

HORN & COMPANY, P.C.; Internal Revenue Service; United States Savings Bank of Newark, New Jersey; Borough of Alpine; Richard Simon; Alice and Osborne Lawrence; Renee and Valerie Simon; Ronald Isley and Rudolph Isley, as Administrators of the Estate of O'Kelly Isley; and Margaret Isley, Defendants.

Bankruptcy No. 84–04492.
Adv. No. 88–1110.

United States Bankruptcy Court,
D. New Jersey.

Aug. 28, 1989.

Cole, Schotz, Bernstein, Meisel & Forman by Jeffrey S. Feld, Hackensack, N.J., for plaintiff.

Logan and Logan, P.C. by John Logan, Englewood, N.J., for defendant, Borough of Alpine.

Osborne L. Lawrence, Teaneck, N.J., pro se.

WILLIAM F. TOUHEY, Bankruptcy Judge.

Before the court is a motion for summary judgment in a pending adversary proceeding. The subject of the present motion is the extent and validity of various liens on property of the estate. The court possesses jurisdiction under 28 U.S.C. §§ 1334(b), 157(a) and the Standing Order of Reference of July 23, 1984. Since this matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(K), the court will issue a final order in conjunction with this opinion. 28 U.S.C. § 157(b)(1).

Pursuant to Fed.R.Bankr.P. 7052, making Fed.R.Civ.P. 52 applicable to all adversary proceedings, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On August 23, 1984, Ronald Isley, the debtor herein, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. However, the attempted reorganization was unsuccessful, and on January 9, 1989, this court ordered the conversion of this case to a chapter 7 liquidation.

At the time of filing, the debtor owned two specific parcels of property. One of these parcels is located on Alison Road, in the Borough of Alpine, New Jersey (the "Alpine property"). The other parcel is located at 90 Van Arsdale Place in Teaneck, New Jersey (the "Teaneck property").

Turning to the Alpine property, the trustee has submitted a calculation of the outstanding tax liens and the interest accruing

on those liens. (Gline Cert.Ex. D.) This exhibit indicates that on December 12, 1983, the Borough of Alpine sold itself a lien certificate for the amount of $22,-255.67. The Borough submits, and the trustee does not dispute, that the interest rate on the lien certificate is 18%. In addition, the exhibit provides a tabulation of the quarterly tax obligations from January 1, 1983 to January 31, 1989. The sum of these tax arrearages, compounded at an 18% annual interest rate, is $198,772.51. To this amount the Borough adds the amount of the tax sale certificate, with interest, for a total tax claim of $241,-420.47.

Turning to the Teaneck property, the trustee provides evidence of three separate tax sale certificates for liens on that property. The first of these certificates is owned by Richard Simon. (Gline Cert., Ex. A.) The date of the tax sale was October 25, 1985, and the certificate represents the taxes owing for the year of 1984. The certificate provides that Mr. Simon purchased an outstanding tax lien of $3,993.68 and includes costs of $79.87. The total amount paid for the tax certificate is therefore $4,073.55. The certificate further provides that interest will accrue on that lien at 11% per annum. A second tax certificate was issued to Alice and Osborne Lawrence on October 30, 1986. (Gline Cert., Ex. B.) This certificate represents the taxes owing for the year of 1985. The cost of the lien was $4,249.49, with interest to accrue at 10% per annum. A third tax certificate has been issued to Renee and Valerie Simon. (Gline Cert., Ex. C.) This certificate is dated October 29, 1987, and represents the taxes owing for the year of 1986. The cost of the lien was $4,434.16, with interest to accrue at 15% per annum. Besides these three tax certificates, there is no other evidence of tax liens upon the Teaneck property.

On December 29, 1988, the chapter 11 trustee filed this adversary complaint. On April 10, 1989, the chapter 7 trustee filed the present motion for summary judgment.

In that motion, the trustee seeks to determine the extent and validity of any state tax lien upon either the Alpine or the Teaneck properties. For the Alpine property, the trustee seeks a determination that the Borough of Alpine possessed a tax lien for all taxes that accrued prior to August 23, 1984, but that the automatic stay prevented the attachment of any postpetition tax liens. In addition, the trustee seeks a similar determination regarding the Teaneck property. While conceding that the Township of Teaneck possessed valid tax liens for taxes accruing prior to August 24, 1984, the trustee contends that the automatic stay prevented any liens from attaching for any subsequent tax claims. Both the Borough of Alpine and the Teaneck certificate holders dispute the trustee's contentions, arguing that all liens attached and remained valid throughout the debtor's bankruptcy proceedings.

## CONCLUSIONS OF LAW

At issue in the present case is the extent and validity of various tax liens. In addition, the parties dispute the rate of interest that has accrued on such liens. Finally, to the extent the court determines that any tax claims are unsecured, the parties dispute the rate of interest on such tax claims. The court will now address these issues in turn.

### I. *Validity of Prepetition and Postpetition Tax Liens*

The trustee concedes that the municipalities possess tax liens for all years prior to 1984, the year that the debtor filed his petition. In addition, the trustee concedes that the municipalities possess tax liens for the period between January 1, 1984 and August 23, 1984, when the debtor filed his petition. However, for the period between August 24, 1984 and December 31, 1984 the trustee contends that the municipalities possessed merely "inchoate" tax liens because the automatic stay prevents the creation of any postpetition liens.[1]

---

1. Section 362(a)(4) prohibits the creation of any liens after the petition is filed:

(a) ... a petition filed under section 301 ... of this title, ... operates as a stay, applicable to all entities of—

Likewise, the trustee contends that the automatic stay prevented the creation of any tax liens for the years of 1985, 1986, 1987, 1988 and 1989.

In order to address the trustee's arguments it is necessary to examine the tax assessment and lien laws of New Jersey. The first step in the process is to determine the amount of the taxable assessment, a process that must be completed by October 1 of the year preceding the tax year. (N.J.S.A. 54:4–35.) The tax assessor must then submit the completed assessment list to the county board of taxation by January 10 of the tax year. *Id.* The county board then reviews the assessment list and divides the revised total by the total amount to be raised by taxation to produce the municipal tax rate. *East Orange v. Palmer*, 47 N.J. 307, 318, 220 A.2d 679 (1966). By May 13 of the tax year the process is completed, and the county board certifies the amount of the taxes to be assessed to the local tax collectors. (N.J.S.A. 54:4–55.)

While the amount of the assessment may not be finalized until May 13, the New Jersey statute provides that "[t]axes on lands shall be a lien on the land on which they are assessed on and after the first day of January of the year for which the taxes are assessed." (N.J.S.A. 54:5–6.) In addition, the statute provides for the perfection of that lien on the same date. (N.J.S.A. 54:5–9.) The purpose of this system, as indicated by the legislative history, was to preserve the state's right to collect the full amount of the taxes assessed upon particular pieces of property:

> Prior to a statutory amendment in 1944, property taxes did not become a lien until December 1 of the tax year. L.1918, c. 237. § 6. According to the sponsor's statement to the bill which became L.1944, c. 247, the effective date of the lien was advanced to prevent a loss of local tax revenues, the change being prompted by court decisions holding that when the Federal Government condemned land it had to pay only those

taxes which had already become due or which were then a lien upon the property. The sponsor stated that the result of this had been that "many municipalities have lost tax revenues on which their current budget was dependent," and that after adoption of the amendment, annual taxes "would have to be paid in full in case of a Federal taking." Statement, Assembly Bill 234 (1944).

*Belles v. East Amwell Twp.*, 178 N.J.Super. 63, 68–69, 427 A.2d 1144 (Tax Court 1981). Once the lien is created on January 1, the state has a perfected interest for all taxes owing for the year. Any subsequent adjustments to the assessment would therefore relate back to January 1. *See, Belles*, at 69, 427 A.2d 1144 (all assessments, including omitted assessments, relate back to January 1 of the tax year.)

From the foregoing analysis, it is clear that the liens for 1984 were both "choate" and perfected before the debtor filed his petition. That lien was perfected under New Jersey law on January 1, 1984. (N.J.S.A. 54:5–6, 54:5–9.) In addition, any argument that such lien was "inchoate" at the time of the filing also lacks merit. As stated by the United States Supreme Court, tax liens are "choate," "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. City of New Britain, Conn.*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954); *United States v. Fidelity Philadelphia Trust Co.*, 459 F.2d 771, 773 (3rd Cir.1972). It is clear that under New Jersey's taxing system, all three elements, including the amount of the lien, have been completed by May 13 of the tax year. Moreover, the legislative history of N.J.S.A. 54:5–6 indicates that this final determination "relates back" to January 1 of the tax year. Therefore the municipalities here possess valid tax liens for the 1984 year.

Concerning the 1984 taxes, the court adopts for an alternative holding the reasoning in a recent Second Circuit decision,

---

(4) any act to create, perfect or enforce any lien against property of the estate;....

11 U.S.C. § 362(a)(4).

*In re Parr Meadows Racing Association, Inc.*, 880 F.2d 1540 (2nd Cir.1989). There the court reviewed the district court's decision concerning the validity of tax liens for the year in which the debtor filed its bankruptcy petition. The district court had held that the postpetition tax lien, created on December 1 of the tax year, was barred by section 362(a)(4). In addition, the district court had held that the taxing authority could not avail itself of section 362(b)(3), an exception to the automatic stay. That section allows the postpetition perfection of a prepetition interest in property if some "generally applicable law" allows that postpetition perfection to relate back to the date the original interest arose.[2] The district court had held that section 362(b)(3) was unavailable to the taxing authorities, reasoning that the "interest" these authorities possessed in postpetition taxes did not arise until those taxes actually became payable. *In re Parr Meadows Racing Association, Inc.*, 92 B.R. 30, 33–35 (Bankr.E.D. N.Y.1988).

On appeal, the Second Circuit reversed the district court's holding concerning section 362(b)(3). *In re Parr Meadows Racing Association, Inc.*, 880 F.2d at 1547–1548 (2nd Cir. July 24, 1989). After reviewing the state's taxing system, the court found that the state's "interest" in all taxes for the year arose on the tax assessment date. *Parr Meadows*, at 1548. The court reasoned that all assessments had occurred by that date, and that under New York law, once the tax assessment date passed, the amount of taxes would be fixed for the year. *Id.*

■ In view of the similarity of the New York and New Jersey tax assessment systems, this court finds the Second Circuit's

reasoning to be persuasive. As in New York, once the assessments have been completed on October 1, New Jersey possesses an identifiable interest in property that cannot be altered by subsequent events. *East Orange v. Palmer*, 47 N.J. 307, 220 A.2d 679 (1966) (acquisition of real property during the tax year, by a tax exempt organization, did not affect the validity of the annual tax assessment completed on October 1); *Jersey City v. Montville Twp.*, 84 N.J.L. 372 (E. & A. 1913) (same). Therefore the court follows the Second Circuit's recent decision in *Parr Meadows*, and holds that pursuant to 11 U.S.C. § 362(b)(3), the municipalities here possessed valid tax liens for the year of 1984.

■ Nevertheless, the automatic stay did bar the creation of those tax liens for the years of 1985, 1986, 1987, 1988 and 1989. As indicated above, N.J.S.A. 54:5–6 provides that the tax lien is created on January 1 of the tax year. Since section 362(a)(4) bars the creation of any postpetition liens, no tax liens exist for the years of 1985, 1986, 1987, 1988 and 1989. Moreover, section 362(b)(3) does not provide any support for the opposite conclusion. There is no indication that the state's interest in collecting its taxes arose any earlier than October 1 of 1984, the date the assessments for the year of 1985 were completed. Since that date passed after the debtor filed his petition, the state's "interest" arose at a postpetition date. Therefore section 362(b)(3) is unavailable to the taxing authorities here. *In re Parr Meadows Racing Association, Inc.*, 880 F.2d at 1548 (2nd Cir. July 24, 1989).

Nevertheless, the municipalities contend that their interest in collecting the taxes arose long before the tax assessment date and that therefore 11 U.S.C. § 362(b)(3)

---

**2.** Section 362(b)(3) provides the following:

(b) The filing of a petition under section 301 ... of this title ... does not operate as a stay—

(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title....

11 U.S.C. § 362(b)(3). Section 546(b) delineates the parameters of this exception:

(b) The rights and powers of a trustee under section 544, 545 and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection.

11 U.S.C. § 546(b).

applies to protect their interest in such taxes. For this conclusion, the municipalities rely upon *Maryland National Bank v. Mayor & City Council of Baltimore*, 723 F.2d 1138 (4th Cir.1983). In that case the state's tax lien was barred by section 362(a)(4). However, the state argued that subsection (b)(3) applied to allow a postpetition perfection of its interest in real property taxes. The state relied upon the following statute:

> Whenever a sale of either real or personal property of a corporation, from which State taxes, are due and payable, shall be made by any sheriff, constable, trustee, receiver or other ministerial officer, under judicial process ˙or otherwise, *all sums due and in arrears for State taxes* from the corporation whose property is sold shall be first paid and satisfied, after the necessary expenses incident to the sale; and the officer or person selling said property shall pay the same to the person whose duty it is to collect or receive said taxes, under the laws of this State. [Emphasis added.]

Md.Ann.Code art. 81 § 202(b). The Fourth Circuit found in favor of the state, holding that subsection (b)(3) applied. The court relied primarily on the cited statute,[3] reasoning that the state possessed a prepetition "interest" in all taxes owing at the time of sale, and that the sale constituted the perfection of that interest: "[Maryland's] interest, by force of the generally applicable law of Maryland, is ever-present and has been a recognized attribute of the State's property interest since a time well before [the date of the petition]...." *Maryland National Bank*, at 1142. The court concluded that the postpetition perfection of that interest was permitted by section 362(b)(3).

The state contends that a similar holding is required here, and points to the following New Jersey statute:

> 54:4–56. Taxes on property sold; apportionment; lien unaffected

Upon the sale and transfer for a valuable consideration or the acquisition through eminent domain or similar proceedings of any real estate in this state, unless otherwise provided in a written agreement between the seller and purchaser or the parties in said proceedings or unless otherwise expressly stipulated, the seller or owner of property to be acquired shall be liable for the payment of such proportion of the taxes *for the current year* upon the property to be conveyed or so acquired as the time between the previous January first and the date of the delivery of the deed by the seller to the purchaser or the date the condemning body acquired its title bears to a full calendar year. If the amount of the taxes for the current year shall not have been determined at the time of the delivery of the deed of conveyance or the taking of its title by the condemning body, the amount of the taxes last previously assessed against such real estate shall be used as the basis for computing the apportionment herein provided. [Emphasis added.]

N.J.S.A. 54:4–56. However, the Borough's reliance is misplaced. This statute, unlike the Maryland statute, applies only to "taxes for the current year." Likewise, the courts have repeatedly confirmed that the statute does not bear on the creation of a tax liability, but is intended merely to provide a fair means of apportionment in the absence of an agreement between the buyer and the seller. *East Orange v. Palmer*, 47 N.J. 307, 321–24, 220 A.2d 679 (1966); *U.S. v. 25.936 Acres of Land*, 57 F.Supp. 383, 384 (D.N.J.1944), *rev'd.* ˙*on other grounds*, 153 F.2d 277 (3rd Cir.1946). Therefore, N.J.S.A. 54:4–56 is not analagous to Md.Ann.Code, art. 81 § 202(b), and the Borough's argument lacks merit.

█ Nevertheless, those taxes that have accrued since January 1, 1985 will be accorded administrative priority status. Section 507 provides that administrative expenses receive first priority status:

---

**3.** The court also relied on another statute, which provided that the purchaser of real property cannot avoid a tax lien for those taxes that accrued prior to the sale. *Maryland National Bank*, at 1142, *citing* Md.Code Ann. art. 81 § 70.

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b)....

11 U.S.C. § 507(a)(1). Section 503(b) provides that postpetition taxes constitute administrative expenses:

(b) After notice and hearing, there shall be allowed administrative expenses of the estate, ... including—

(B) any tax—

(i) incurred by the estate,....

11 U.S.C. § 503(b)(1)(B)(i). Therefore, those taxes that accrued between January 1, 1985 and the present shall be accorded administrative priority status.

In summary, the Borough of Alpine and The Township of Teaneck possess perfected tax liens for all taxes due through December 31, 1984. However, the automatic stay barred the creation of any subsequent tax liens. Those taxes that have accrued since January 1, 1985 shall receive administrative priority status.

## II. Validity of Tax Sale Certificates

■ As indicated above, there are currently three separate tax sale certificates outstanding on the Teaneck property: (1) that certificate owned by Richard Simon, purchased on October 25, 1985 and representing the outstanding taxes for 1984; (2) that certificate owned by Alice and Osborne Lawrence, purchased on October 30, 1986, and representing the outstanding taxes for 1985; and (3) that certificate owned by Renee and Valerie Simon, purchased on October 29, 1987, and representing the outstanding taxes for 1986. Since the automatic stay prevented the Township of Teaneck from receiving liens for the 1985 and 1986 taxes, the Township lacked any liens to sell, and the second and third certificates are invalid. *Matter of Ballentine Bros.*, 86 B.R. 198, 203 (Bankr.Neb.1988). However, the Township did possess a lien for the 1984 taxes, and absent the debtor's bankruptcy petition, it possessed a right to sell the first tax lien certificate to Richard Simon. The issue therefore becomes whether that sale violated the automatic stay.

Section 362(a) provides that the following act constitutes a violation of the automatic stay:

(3) any act ... to exercise control over property of the estate;

11 U.S.C. § 362(a)(3). To define the parameters of this subsection, it is necessary to rely upon the purposes behind the automatic stay. *In re Continental Air Lines*, 61 B.R. 758, 779 (S.D.Tex.1986). There are two purposes behind the automatic stay: (1) to provide the debtor with a "breathing spell" from creditors; and (2) to protect individual creditors from the effects of a "race to the courthouse" and thereby promote equal treatment of creditors. H.Rep. No. 95–595, 95th Cong., 1st Sess., *reprinted in* 1978 U.S.Code Cong & Ad.News 5787, 5963, 6296–97; *H & H Beverage Distributors v. Dept. of Revenue of the Commonwealth of Pennsylvania*, 850 F.2d 165, 166 (3rd Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988).

■ The court finds that the sale of such certificates violates Congress's intent to provide the debtor with a "breathing spell." The purchaser of the tax sale certificate receives thereby an interest in the debtor's property which may be recorded as a mortgage. (N.J.S.A. 54:5–50.) To redeem the property from such an interest the debtor must pay the amount of the tax lien, plus the expenses incurred by the tax sale. (N.J.S.A. 54:5–58.) Thus, by holding such sales, the taxing authority effectively forces the debtor to appear or be subjected to further incidental expenses. Since such sales impinge upon the debtor's "breathing spell," the court finds that the sale to Richard Simon violated the automatic stay and is therefore *void ab initio*. 11 U.S.C. § 362(a)(3); *N.L.R.B. v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 940 (6th Cir. 1986); *Borg Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982).

## III. Interest on Secured and Unsecured Claims

### A. Secured Tax Claims

■ As indicated above, the Borough of Alpine possesses a tax lien for years of

1983 and 1984. In addition, the Township of Teaneck possesses a tax lien for the taxes outstanding for the year of 1984.

Interest on such liens accrued during the prepetition period at the statutory rate of interest. New Jersey law provides that the local taxing authority may provide for such interest at an annual rate that is not to exceed 8% on the first $1500 and 18% on the remaining amount. (N.J.S.A. 54:4–67.)[4] This 8% cap on the first $1500 applies to the first $1500 due *each year. Millburn Twp. v. Block 1208, Lot 2*, 189 N.J.Super 523, 528–29, 461 A.2d 163 (Ch. Div.1983). The interest is calculated from the date the quarterly installments became due. (N.J.S.A. 54:4–66, 54:4–67.)[5]

Pursuant to the recent United States Supreme Court decision in *United States v. Ron Pair Enterprises, Inc.*, —— U.S. ——, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the municipalities shall recover postpetition interest on the valid tax liens. 11 U.S.C. § 506(b); *Ron Pair*, 109 S.Ct. at 1030. In addition, since section 506(b) does not provide a specific rate of interest on such non-consensual liens, the rates of interest provided by the otherwise applicable statutes govern. *See In re Parr Meadows Racing Ass'n.*, 880 F.2d at 1549 (2nd Cir. 1989); *In re Lapiana*, 100 B.R. 998 (N.D. Ill.1989); *In re Crane Automotive, Inc.*, 98 B.R. 233, 236–37 (Bankr.W.D.Pa.1989); *In re Rorie*, 98 B.R. 215, 219 n. 5 (Bankr.E.D. Pa.1989); *In re Krump*, 89 B.R. 821, 825 (Bankr.S.D.1988); *In re Henzler Manufacturing Co.*, 55 B.R. 194, 197 (Bankr.W.D. Ohio 1985); *In re Hoffman*, 28 B.R. 503, 508 (Bankr.Md.1983). Therefore, in calculating the interest due at the time of distribution, the trustee will apply the statutory rate of interest allowed by N.J.S.A. 54:4–67 and provided for by the local municipalities' adopted resolutions.

### B. *Unsecured Claims*

As indicated above, tax claims from January 1, 1985 to the present assume administrative priority status. 11 U.S.C. § 503(b)(1)(B). The interest accruing on those claims also receives administrative priority status. *United States v. Friendship College, Inc.*, 737 F.2d 430, 433 (4th Cir.1984); *Matter of Pharmadyne Laboratories, Inc.*, 53 B.R. 517, 523 (Bankr.N.J. 1985). Moreover, since the statute does not provide a rate of interest, such interest will apply at the statutory rates outlined above.

---

**4.** The Borough of Alpine asserts, and the trustee does not dispute, that the Borough has timely adopted a resolution providing for the statutory maximum rate of interest. *See* N.J.S.A. 54:4–72. However, there is no indication that the Township of Teaneck adopted a similar resolution.

**5.** The Borough's purchase of its own tax sale certificate for the 1983 taxes does not affect the 8% cap on the first $1500. N.J.S.A. 54:5–59.