**In re Michael FORMISANO and Valerie Formisano, Debtors.**

**Michael FORMISANO and Valerie Formisano, Plaintiffs,**

v.

**NATIONAL COMMUNITY BANK, Fidelity Union Bank, the Trust Company of New Jersey, John Valentine, LER Graphics, Inc., and Maria Baratta, Defendants.**

**Bankruptcy No. 89–00479M.
Adv. No. 90–2074.**

United States Bankruptcy Court, D. New Jersey.

Nov. 2, 1992.

petition tort or violation of statute.

Nicholas S. Brindisi, Clifton, NJ, for plaintiffs.

Susan Youdovin, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, NJ, for the Trust Co. of New Jersey.

Maria Baratta, pro se.

Aurel A. Villari, Jersey City, NJ, for Maria Baratta.

## DECISION

NOVALYN L. WINFIELD, Bankruptcy Judge.

This adversary proceeding involves an attempt on the part of Michael and Valerie Formisano, the debtors herein (the "Debtors"), to establish the validity, priority and extent of certain liens and mortgages encumbering certain parcels of real estate owned by the Debtors. This matter comes before the court on the Debtors' motion for summary judgment with respect to the liens and/or mortgages of defendants Fi-

delity Union Bank, LER Graphics, John Valentine, and Maria Baratta ("Baratta").

This matter was first heard by the Honorable Daniel J. Moore on July 1, 1991, and the court entered an order on July 18, 1991 with respect to the liens and/or mortgages of Fidelity Union Bank, LER Graphics, and John Valentine.[1] The court, however, reserved its decision with respect to the lien held by defendant Baratta. Due to the untimely death of Judge Moore, this matter came before this court on April 23, 1992. Mr. Brindisi, counsel to the Debtors, was unable to appear on that date and by his April 21, 1992 letter to the court he waived his right to be present. The remaining parties consented to have the matter decided on the record.

This court has considered the argument of counsel, the pleadings and legal memoranda submitted by the parties, and makes the following findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). This court has jurisdiction in accordance with 28 U.S.C. § 1334 and the Standing Order of Reference dated July 23, 1984, and the venue is properly fixed in this court pursuant to 28 U.S.C. § 1409.

## FACTS

1. The Debtors filed their voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code on January 20, 1989, however, the attempted reorganization was unsuccessful and the court ordered the conversion of this case to a Chapter 7 liquidation.

2. At the time of the filing, the Debtors owned, *inter alia*, the following described real property:[2]

Lot 29, Block 73 in the Borough of Rutherford, County of Bergen and State of New Jersey, more commonly known as 74–80 Park Avenue ("Park Avenue").

3. Park Avenue is commercial real estate.

4. At the time of the bankruptcy filing the following liens on Park Avenue were reflected on the records of the Bergen County Clerk's Office:

(i) Mortgage to Fidelity Union Bank dated May 10, 1984 and recorded on May 16, 1984 in Mortgage Book 6674 at page 892.[3]

(ii) Mortgage to The Trust Company of New Jersey dated January 28, 1985 and recorded on January 30, 1985 in Mortgage Book 6784 at page 748.

(iii) Mortgage to The Trust Company of New Jersey dated December 2, 1985 and recorded on December 11, 1985 in Mortgage Book 6944 at page 296.

(iv) Mortgage to The Trust Company of New Jersey dated August 21, 1986 and recorded on October 3, 1986 in Mortgage Book 7114 at page 783.

(v) Lis Pendens No. 10849 of The Trust Company of New Jersey dated December 29, 1988 regarding the three mortgages listed above.

(vi) Financing Statement No. 4138–85 of The Trust Company of New Jersey dated August 8, 1985.[4]

---

**1.** The July 18, 1991 order voided, set aside and discharged the following mortgages and/or liens:

(i) September 22, 1982 mortgage of Fidelity Union Bank, secured by 17 Wilson Avenue, Rutherford, New Jersey;
(ii) May 10, 1984 mortgage of Fidelity Union Bank, secured by 74 Park Avenue, Rutherford, New Jersey;
(iii) Judgment of LER Graphics, Inc. entered on April 13, 1989 under Docket No. J–31733–89 in Superior Court; and
(iv) Judgment of John Valentine entered on January 6, 1989 under Docket No. J–04312–89 in Superior Court.

**2.** The Debtors also owned the following described real property:
Lot 8–11, Block 115 in the Borough of Rutherford, County of Bergen and State of New Jersey, more commonly known as 17 Wilson Avenue ("Wilson Avenue").
Wilson Avenue was the Debtors' residence.

**3.** This mortgage was paid off when the Debtors refinanced their debt with the Trust Company of New Jersey; however, the mortgage was not discharged of record.

**4.** The mortgages and other liens held by the defendant, The Trust Company of New Jersey (the "Bank") are not a subject of this summary judgment motion.

(vii) Judgment number J–04312–89 of John Valentine dated January 6, 1989.

5. On April 13, 1989, LER Graphics, Inc. caused a judgment to be entered against the Debtors under judgment number J–31733–89.

6. After the bankruptcy filing, on December 14, 1989, the Borough of Rutherford (the "Borough") conducted a tax sale based upon Debtors' failure to pay their outstanding 1988 real estate tax obligation on Park Avenue. At the tax sale, Baratta paid the outstanding 1988 tax obligation and was given a tax certificate (the "Tax Certificate") evidencing such payment pursuant to N.J.S.A. 54:5–46. The Tax Certificate has a face amount of $12,350.39. The Tax Certificate was filed of record in the office of the Clerk of Bergen County, on December 28, 1989, in Mortgage Book 7822 at page 955.

7. On December 27, 1989, Baratta paid the Borough $13,711.37, representing the taxes due on Park Avenue for 1989 (the "1989 Taxes").

8. On February 13, 1990, Baratta paid the Borough $3,188.00, representing the taxes due on Park Avenue for the first quarter of 1990 (the "1990 Taxes").

9. Baratta filed with the Rutherford Tax Collector affidavits memorializing the payments on the 1989 Taxes and the 1990 Taxes.

10. The total amount of the 1988, 1989, and 1990 taxes paid by Baratta was $29,-249.76.

11. On February 22, 1990, the Debtors filed their Complaint to Prove the Extent and Validity of Liens on Real Estate.

12. Baratta filed her answer claiming a priority lien on Park Avenue by virtue of the Tax Certificate.

13. On or about February 20, 1991, Debtors filed this motion for summary judgment with respect to the liens and/or mortgages of defendants Fidelity Union

Bank, LER Graphics, John Valentine, and Baratta.

14. Baratta and the Bank filed responsive papers with the court with respect to Baratta's claim.[5]

15. A hearing was held on July 1, 1991, and the court entered an order on July 18, 1991 disposing of all the matters presented in the motion for summary judgment except the claim of Baratta.[6]

## DISCUSSION

The issue before this court is the extent and validity of the purported liens held by Baratta by virtue of the Tax Certificate and her payment of the 1989 Taxes and the 1990 Taxes. Baratta claims that she holds a first priority lien with respect to the Tax Certificate and the subsequent taxes paid. The Bank asserts that because the Tax Certificate was issued *after* the filing of the bankruptcy petition, it is void *ab initio*. Baratta counters that even if the tax sale was in violation of the automatic stay, the Tax Certificate is not void, but only voidable, and this court should annul the automatic stay with respect to the tax sale. The Debtors do not take a position on the characterization of Baratta's purported liens, and acknowledge that the taxes are due either to the Borough or to Baratta.

At the time of the bankruptcy filing, there were two outstanding tax liens on Park Avenue in favor of the Borough. A lien for both the 1988 and the 1989 real estate taxes. Each of the liens arose "on or after the first day of January of the year for which the taxes [were] assessed." N.J.S.A. 54:5–6.[7] None of the parties has asserted that the Borough did not have valid tax liens for 1988 and 1989.

As to the Tax Certificate, the Borough did possess a lien for the 1988 taxes, and absent the Debtors' bankruptcy petition, it possessed a right to sell the Tax Certificate to Baratta. The Bank asserts that the sale

---

5. Papers filed by other parties are not relevant to this opinion, and therefore, are not listed here.

6. See footnote number 1.

7. Rutherford's perfected tax liens for the 1988 taxes and for the 1989 taxes arose by operation of law on January 1, 1988, and on January 1, 1989, respectively. N.J.S.A. 54:5–6.

of the Tax Certificate violated the provisions of the automatic stay and, therefore, is void. 11 U.S.C. § 362(a); *In re Isley*, 104 B.R. 673 (Bankr.D.N.J.1989). Baratta argues that even if the automatic stay was violated by the tax sale, this court may annul the stay retroactively in order to validate the tax sale. This court agrees with Baratta for the reasons set forth below.

### I. The Automatic Stay

Section 362 of the Bankruptcy Code provides in part:

Automatic stay.

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

Subsection (a) defines the scope of the automatic stay by listing the acts that are stayed by the commencement of the bankruptcy case. Subsection (b) sets forth specific exceptions to the automatic stay rule. *See* 11 U.S.C. § 362(b). None of the exceptions apply here.

First, Baratta's counsel argues that the tax sale was not a violation of the automatic stay, but rather nothing more than a post-petition transfer of a pre-petition lien. He reasons that since the sale does not create, perfect or enforce the lien there can be no violation of the automatic stay.

This reasoning can not stand up to the express language of section 362(a)(3), as such a transfer by the purchase of a tax certificate is an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate". 11 U.S.C. § 362(a)(3); *Isley*, at 679.

Baratta's second argument that the automatic stay was not violated when she purchased the Tax Certificate is based upon 11 U.S.C. § 549(a)(1). Baratta claims

she did not have knowledge of the Debtors' bankruptcy filing, and that consequently, she is a good faith purchaser within the context of section 549. Section 549 provides in part:

(a) Except as provided in subsection ...

(c) of this section, the trustee may avoid a transfer of property of the estate ... that occurs after the commencement of the case ... that is not authorized under this title or by the court.

(c) The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property maybe recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser.

(d) An action or proceeding under this section may not be commenced after the earlier of—(1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed.

11 U.S.C. § 549.

In order to determine how to characterize acts in violation of the automatic stay, including the tax sale and the subsequent issuance of the Tax Certificate to Baratta, it is necessary to understand the purpose behind the statute.

The scope of the automatic stay is broad. *Maritime Electric Company v. United Jersey Bank*, 959 F.2d 1194, 1203 (3d Cir.1991) (citations omitted). Several purposes are served by the automatic stay. First, the bankrupt is given a breathing spell from creditors by stopping all collection efforts. *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir.1982). Second, the stay protects creditors by preventing particular creditors from acting to protect their own self interests to the detriment of other creditors. *Id.* "In other words, the

stay 'protect[s] the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had the chance to marshal the estate's assets and distribute them equitably among the creditors.' *Martin–Trigona v. Champion Fed. Sav. & Loan Assoc.*, 892 F.2d 575, 577 (7th Cir.1989)." *Maritime Electric Co., Inc., supra* at 1204.

In a case which is factually similar to the instant case, one bankruptcy court stated:

The purpose of the automatic stay will be implemented by declaring void all acts in violation of the automatic stay. If some acts in violation of the automatic stay were not void, debtors would have to affirmatively challenge such acts if they wished to avoid them.... Such affirmative action by debtors, and concomitant expenditures of mental and monetary resources, would be contrary to the purpose of the automatic stay.

*New Orleans Airport Motel Associates, Ltd. v. Lee (In re Servico, Inc.)*, 144 B.R. 933, 935 (Bankr.S.D.Fla.1992) (citations omitted).

In *In re Servico, Inc.*, the debtor sought to set aside the purported postpetition sale of certain of debtor's real property. The purchaser of the property at the tax sale acknowledged that his purchase of the property was in violation of the automatic stay; however, he claimed that the sale could not be avoided because the transfer was within section 549(c).

That court held that all acts in violation of the automatic stay are void, including the post-petition tax sale.[8] The court noted, however, that section 362(d) permits retroactive relief from the automatic stay under certain circumstances by way of annulment. "When the stay is annulled, the act which would have been in violation of the stay is permitted. However, when the stay is annulled there is no violation of the stay." *Id.* at 936 (citation omitted). "By holding all acts in violation of the automatic stay to be void, but considering § 362(d) annulment of the stay as to certain pur-

chasers, the burden of bringing an action to characterize the transfer has shifted to the purchaser and the purposes of the automatic stay ... are implemented." *Id.* at 936–937.

*"Void ab initio" vs. "Voidable"*

While the court in *In re Servico* did not use the labels "void *ab initio*" or "voidable", courts have generally characterized actions taken in violation of the automatic stay as either void *ab initio* or voidable. Courts which have held certain actions taken in violation of the automatic stay to be void *ab initio* include the Third Circuit. *Raymark Industries, Inc. v. Lai*, 973 F.2d 1125 (3d Cir.1992) (bankruptcy court has power to vacate decision of California Court of Appeal dismissing debtor's appeal because actions taken in violation of automatic stay are void *ab initio* ); *Maritime Electric Co., Inc.*, 959 F.2d at 1206, citing *Kalb v. Feuerstein*, 308 U.S. 433, 438–40, 60 S.Ct. 343, 345–47, 84 L.Ed. 370 (1940) (absent relief from the stay, judicial actions and proceedings against the debtor are void *ab initio* ). *See also In re Ward*, 837 F.2d 124, 126 (3d Cir.1988) (sheriff's sale conducted in violation of automatic stay is "void and without effect", citing *Kalb, supra* ).

The Third Circuit in *Maritime Electric Co., Inc.* held that a judgment entered by the district court against the debtor after the debtor had filed for bankruptcy was void *ab initio*. The court reasoned that its holding was:

consistent with the stay's function of "enabl[ing] the bankruptcy court to decide whether it will exercise its power under section 502(b) of the Bankruptcy Code to establish the validity and amount of claims against the debtor or allow another court to do so, thereby preventing the 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir.1986), quot-

---

**8.** It is important to note that the defendant in *In re Servico* did not request that the automatic

stay be annulled, as Baratta has in this case.

ing *In re Holtkamp,* 669 F.2d 505 (7th Cir.1982).

*Maritime Electric Co., Inc.,* 959 F.2d at 1207 (alteration in original).

In a footnote to its opinion, the Third Circuit set forth the following discussion of the rationale other courts have employed in finding that an act in violation of the automatic stay is voidable rather than void *ab initio:*

> The courts concluding that acts violating the stay are voidable rather than void rely on section 362(d) which permits retroactive annulment of the stay, and on other provisions of the Code which have been used to cure acts purportedly void under the automatic stay. These courts maintain that a violation of the stay "can be declared invalid in an appropriate proceeding but are capable of being cured by confirmation or ratification or if no proceeding is brought to avoid the voidable act."

> We need not decide here whether a bankruptcy court may exercise its equitable powers to retroactively rehabilitate judicial acts and proceedings which would otherwise be void *ab initio* as violations of the automatic stay. Here, the bankruptcy court never granted prospective or retroactive relief from the automatic stay.

*Maritime Electric Co., Inc.,* 959 F.2d at 1207, n. 11 (citations omitted) (quoting *In re Schwartz,* 119 B.R. 207, 209 (9th Cir. BAP 1990)).

This court is unaware of any Third Circuit cases which discuss circumstances similar to those in the instant case.[9] In addition, the Third Circuit has generally left open the question of whether the annulment of automatic stay is ever appropriate and, if so, under what circumstances. *See id. See also Lampe v. Xouth, Inc.,* 952 F.2d 697, 700 (3d Cir.1991).

The Bank would have this court rely on the *Isley* case for the finding that the Tax Certificate is void. Regarding the validity of certain tax sale certificates that were sold after the Debtor filed for bankruptcy, the court said:

> the sale of such certificates violates Congress's intent to provide the debtor with a "breathing spell".... To redeem the property from such an interest the debtor must pay the amount of the tax lien, plus the expenses incurred by the tax sale.... Thus, by holding such sales, the taxing authority effectively forces the debtor to appear or be subjected to further incidental expenses. Since such sales impinge upon the debtor's "breathing spell", the court finds that the sale to Richard Simon violated the automatic stay and is therefore void *ab initio.* 11 U.S.C. § 362(a)(3).

*Isley, supra* at 679 (citations omitted).

Baratta's counsel agrees that the issues which faced the court in *Isley* are basically the same as those before this court. However, he points out that the arguments presented to this court were not presented to the *Isley* court, and therefore were not considered by Judge Touhey. A close look at *Isley* reveals that the holder of the tax certificate was not represented by counsel nor did he appear *pro se* before the court. No argument was made to the *Isley* court that the estate would be better off, or at least would not be injured, if the tax certificate was not voided. In fact, that court found that by holding a tax sale, the taxing authority "effectively forces the debtor to appear or be subjected to further incidental expenses." *Id.* Likewise, as in *In re Servico,* no one asserted that the court had the power under section 362(d) to annul the automatic stay in order to validate an otherwise void act. Both of these arguments have been asserted by Baratta and must be considered by this court.

As an aid to determination of whether there is a true distinction between "void *ab initio*" or "voidable", or whether it is a distinction without a difference, the court turns to *Black's Law Dictionary:*

9. While the case of *Makoroff v. City of Lockport, N.Y.,* 916 F.2d 890 (3d Cir.1990), involves the issue of whether the creation of post-petition liens for unpaid city and county real property taxes on a bankruptcy estate violates § 362, it does not address the question of whether a particular act is void or voidable.

**Void.** Null; ineffectual; nugatory; having no legal force or binding effect; unable, in the law, to support the purpose for which it was intended.... An instrument or transaction which is wholly ineffective, inoperative, and incapable of ratification and which thus has no force or effect so that nothing can cure it....

There is this difference between the two words "void" and "voidable": *void* in the strict sense means that an instrument or transaction is nugatory and ineffectual so that nothing can cure it; *voidable* exists when an imperfection or defect can be cured by the act or confirmation of him who could take advantage of it. The term "void," however, as applicable to conveyances or other agreements, has not at all times been used with technical precision, nor restricted to its peculiar and limited sense, as contradistinguished from "voidable"; it being frequently introduced, even by legal writers and jurists, when the purpose is nothing further than to indicate that a contract was invalid, and not binding in law....

The word "void," in its strictest sense, means that which has no force and effect, is without legal effect, is incapable of being enforced by law, or has no legal or binding force, but frequently the word is used and construed as having the more liberal meaning of "voidable."

The word "void" is used in statutes in the sense of utterly void so as to be incapable of ratification, and also in the sense of voidable and resort must be had to the rules of construction in many cases to determine in which sense the Legislature intended to use it. An act or contract neither wrong in itself nor against public policy, which has been declared void by statute for the protection or benefit of a certain party, or class of parties, is voidable only.

*Black' Law Dictionary* 1573–1574 (6th ed. 1990) (citations omitted).

█ Based on a reading of the various cases cited herein and the definition of "void" in *Black's,* this court finds that there is no difference between "void" or "voidable" for purposes of characterizing an action in violation of the automatic stay. Under applicable Third Circuit case law all acts which violate section 362 are void. This court finds that the tax sale conducted by the Borough and the Tax Certificate which was issued to Baratta did not result in a transfer within Section 549(c), and therefore, did violate the automatic stay.

Baratta's counsel argues that even if the tax sale violated the automatic stay, the automatic stay should be retroactively annulled under section 362(d).

### II. Relief from the Automatic Stay

Once triggered, the automatic stay continues until the bankruptcy case is closed, dismissed, or discharge is granted or denied, or until the bankruptcy court grants some relief from the stay. *See* 11 U.S.C. § 362(a), (c)(2), (d), (e), (f).

█ Relief from the stay can be granted only by the bankruptcy court which has jurisdiction over the debtor's case. *See Maritime Electric Co., Inc. supra* at 1207. The bankruptcy court has the authority to provide relief from the stay upon the request of a "party in interest" and after notice and a hearing. 11 U.S.C. § 362(d). Section 362(d) provides that the automatic stay may be terminated, annulled, modified or conditioned.[10] 11 U.S.C. § 362(d). Section 362(d)

> expressly grants bankruptcy courts the option, in fashioning appropriate relief, of "annulling" the automatic stay, in addition to merely "terminating" it. The

---

**10.** 11 U.S.C. § 362(d) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

word "annulling" in this provision evidently contemplates the power of bankruptcy courts to grant relief from the stay which has retroactive effect; otherwise its inclusion, next to "terminating," would be superfluous. *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 179 (5th Cir.1989) (citing *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir.1984)).

■ Generally the court would not modify the automatic stay absent the request of an interested party after a hearing upon notice. Clearly, the Borough would be the proper party to request that the stay be modified with respect to the tax sale; however, the Borough is not a party to this action. The only request for modification of the stay comes from Baratta. However, the court may upon its own initiative take such an action. *See* 11 U.S.C. § 105.

■ Baratta was not a creditor of the Debtors when the petition was filed. She would have had no reason to know of the Debtors' filing. She purchased the Tax Certificate without knowledge of the pending bankruptcy. Avoiding the tax sale would extinguish Baratta's lien with no corresponding benefit to the Debtors' estate. While it is true that the tax sale violated the automatic stay, it did not create a scramble for the debtor's assets. Rather there was a transfer of a lien from the Borough to Baratta, which will accrue interest at a lower rate than if the Borough held the lien. In fact, if the tax sale were voided, the Debtors' estate would be prejudiced in that the perfected tax lien held by the Borough would revert to the statutory interest rate of 8% on the first $1,500.00 and 18% on the remaining amount. The Tax Certificate, on the other hand, accrues interest at 11%. While it is not mentioned in the papers submitted by the parties, the court recognizes that N.J.S.A. 54:5–61 provides that the holder of a tax certificate is automatically entitled to an additional 6% of the amount paid by her where that amount exceeds $10,000.00. Therefore, the actual interest rate on the tax certificate is 17%. Consequently, as the interest rate on the tax certificate is less than the statutory

rate to which the Borough would otherwise be allowed, the estate will not be damaged by the annulment of the stay with respect to the tax sale. In addition Baratta would be required to expend even more of her funds to recover the monies paid to the Borough for the Tax Certificate. In light of the foregoing, the equities in this case clearly favor retroactive annulment of the stay as to the tax sale.

Therefore, the court finds that the automatic stay as it relates to the tax sale conducted by the Borough on December 14, 1989 is retroactively annulled. The Tax Certificate is, therefore, valid and enforceable in accordance with the laws of the State of New Jersey. Likewise, since the Borough held a valid lien for the 1989 real estate taxes, the payment made by Baratta for the 1989 Taxes is a valid lien on Park Avenue.

■ As to the 1990 Taxes, which are post-petition taxes, the automatic stay prevents the creation of a lien post-petition. *Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.*, 884 F.2d 80, 84 (3d Cir.1989), *Makoroff v. City of Lockport, N.Y.*, 916 F.2d 890 (3d Cir.1990). New Jersey statutes provide that the tax lien is created on January 1 of the tax year. N.J.S.A. 54:5–6. Since Bankruptcy Code Section 362(b)(4) bars the creation of any post-petition liens, and the Debtors' petition was filed before January 1, 1990, no tax lien exists for 1990. Consequently, with respect to the 1990 Taxes, the Borough did not have a valid lien, and therefore, Baratta does not have a valid lien.

■ Even though Baratta does not have a valid lien for the 1990 Taxes, the Debtors' counsel notes that Baratta may claim she is entitled to priority as an administrative expense. Section 507 of the Code provides that administrative expenses receive first priority status:

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b)....

11 U.S.C. § 507(a)(1). Section 503(b) provides that postpetition taxes constitute administrative expenses:

> (b) After notice and hearing, there shall be allowed administrative expenses of the estate, ... including—
>
> (B) any tax—
>
> (i) incurred by the estate, ....

11 U.S.C. § 503(b)(1)(B)(i). Therefore, the 1990 Taxes shall be afforded administrative priority status. *Isley,* 104 B.R. at 678.