**In the Matter of Kay Christine RUTTER, Debtor.**

**DOLLARWATCHERS, INC., a Michigan Corporation, Plaintiff,**

v.

**Kay Christine RUTTER, Defendant.**

**Bankruptcy No. 82–00368.
Adv. No. 82–0373.**

United States Bankruptcy Court,
E.D. Michigan, S.D.
at Flint.

Dec. 9, 1982.

Brian I. Brown, Burton, Mich., for debtor/defendant.

Robert L. Shegos, Flint, Mich., for plaintiff.

MEMORANDUM OPINION

STANLEY B. BERNSTEIN, Bankruptcy Judge.

On November 4, 1982 Dollarwatchers, Inc., a Michigan Corporation, ("Dollarwatchers") filed a complaint to lift stay so that it could foreclose its second mortgage on the debtor's residence. A preliminary hearing on the complaint was held on December 2, 1982.

Due to the unusual posture of this Chapter 13 case, which became better defined during the preliminary hearing, the Court has issued this opinion to explain its decision to modify the stay to permit foreclosure proceedings in a pending state court action.

I. *Findings of Fact*

The following findings of fact are based upon a review of the pleadings filed in this adversary proceeding, the files of the debtor's Chapter 13 case, the pleadings filed in the State action as defined below, and admissions made by counsel at the preliminary hearing:

1. On January 14, 1981, the debtor, Kay C. Rutter, ("Debtor"), formed a Michigan corporation, Kay C. Rutter Company ("Rutter Co."), for the purpose of borrowing $21,000 from Mutual Mortgage Company, a Michigan corporation ("Mutual").

2. Payment and performance of Rutter Co.'s obligations to Mutual were secured by a second mortgage on the debtor's residence.

3. The interest of Mutual in the second mortgage loan documents was assigned on January 14, 1981 to Dollarwatchers.

4. On January 12, 1982, the Debtor filed a class action complaint against Mutual, Salem Mortgage Company ("Salem") and others, on behalf of herself and others similarly situated, in Genesee County Circuit Court, File No. 85–65577–CP, for damages and other sanctions arising from violations of the Michigan Consumer Protection Act, M.C.L.A. § 445.903, the Michigan Usury Act, M.C.L.A. § 438.31, and other federal and state laws and/or regulations.

5. The issues were then joined in the State action and discovery was conducted by the Debtor. The Debtor also engaged in settlement negotiations with Mr. Joseph Steingold, ("Steingold") a person whom debtor's counsel referred to as the key man behind Salem and the other corporate defendants.

6. According to the Debtor's counsel, Steingold threatened to foreclose the second mortgage on the Debtor's residence.

7. At the time of this alleged threat, Rutter Co. was delinquent in payments due under the second loan documents.

8. Even though the Debtor had filed the State action, she decided not to seek injunctive relief against Mutual, Steingold, or any other real party in interest in the State action. She chose instead to file a Chapter 13 petition in order to enjoin the threatened foreclosure under the automatic stay effective upon the filing of the petition. The petition was filed on April 8, 1982.

9. The schedules of creditors and draft plan filed by the Debtor stated that the second mortgagee was Salem.

10. The schedules show that there were only two unsecured debts totalling $165.

11. The final plan proposed to cure an arrearage on the second mortgage debt of $2,170 in monthly payments over a period of 22 months.

12. Under 11 U.S.C. § 342 and Bankruptcy Rule 13–203, the Debtor was required to give notice of the hearing on confirmation to all creditors with liens on Debtor's real property.

13. The Debtor had to know that Mutual would not receive direct notice of the hearing on confirmation and would, therefore, be denied an opportunity to object to confirmation and the treatment of its secured debt under the plan.

14. At the hearing on confirmation held on July 29, 1982, the Debtor represented to the Court that there were no objections, and based upon that representation and a review of the plan, the Court entered an

order of confirmation as drafted by the Debtor.[1]

15. The Debtor knew that payments under the plan would be paid by the standing Chapter 13 trustee to Salem, even though she knew that Mutual was the original mortgagee. Had the Debtor searched the title records to the mortgaged property, she also would have discovered that Dollarwatchers was the assignee of record of Mutual's interest.

16. On November 4, 1982, Dollarwatchers filed a complaint to lift stay, alleging that it now held the Mutual mortgage, the mortgage obligations were in default, the plan was in default, and by virtue of the defaults under the plan, its interest was not adequately secured.

17. On or about November 12, 1982, the Debtor filed an answer denying the defaults and affirmatively defending on the theory that the residence was worth more than the first and second mortgage debts.

18. On December 2, 1982, at the preliminary hearing, Dollarwatchers explained that it filed the complaint to lift stay because the debtor claimed an interest in the mortgaged premises and it did not want to run the risk of contempt by violating the stay if it started foreclosure proceedings without leave of this Court.

19. Dollarwatchers also expanded upon its legal position by claiming that the mortgagee was denied notice of the confirmation hearing, that litigation arising from the mortgage transaction was proceeding in two different courts in cases filed by the Debtor, and that Dollarwatcher was prepared to intervene and counterclaim to foreclose in the State action if the stay were lifted.

20. The Debtor's explanation for her course of conduct was that Dollarwatchers,

Salem, Mutual, and Steingold were alter egos and that the Debtor answered an advertisement of Salem for second mortgage financing and dealt with Salem.

II. *Analysis*

*Lifting the Stay for Cause: Administration of Justice*

11 U.S.C. § 362(d) states:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ... such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause...

■ The Court has found as sufficient cause for modifying the stay in this case that the administration of justice and the convenience of the parties is better served by having the State court act as the one tribunal before which all claims, counterclaims, or cross-claims may be heard.

In this instance, the Debtor is the one who filed the State action challenging the validity of the incorporation of Rutter Co. and the interest rate charged under the second mortgage loan documents. The same individual filed the Chapter 13 petition. The Debtor's Chapter 13 filing precluded the mortgagee's assertion of counterclaims to foreclose in the State action. Thus, Dollarwatchers' grievance is essentially that the Debtor cannot in fairness use the State action as a sword and the Chapter 13 as a shield with respect to the same mortgage transaction.

By scheduling Salem as the secured creditor, and not Mutual or its assignee, the Debtor also prevented a timely request by the mortgagee to remove the State action to this Court.[2]

---

1. Bankruptcy Judge George E. Woods whose chambers are in Detroit was assisting retiring Bankruptcy Judge Harold H. Bobier in the administration of the Flint Docket; Judge Woods presided at the confirmation hearing and entered the order.

2. If not the Debtor, then surely her counsel acted improperly in presuming to make a judicial determination that Mutual was an alter ego of Salem, and then listing Salem as the mortgagee on the schedules and plan. To allow the Debtor that choice is to defeat effective notice which is the foundation of due process.

Under the circumstances, the Court has concluded that all claims and counterclaims relating to the second mortgage transaction are more properly heard by one tribunal—the tribunal of the Debtor's initial choice, namely, the Genesee County Circuit Court.

■ The Court does not have to reach the issue of adequate protection in this adversary proceeding because under 11 U.S.C. § 362(d)(1), it is vested with discretion to find "cause" for other than a denial of adequate protection. "Adequate protection" is only one type of cause upon which the lifting or modifying of the stay may be premised.

■ The Court also has the discretion to treat the preliminary hearing as the final hearing under 11 U.S.C. § 362(e): "... a hearing under this subsection may be a preliminary hearing or may be consolidated with the final hearing under subsection (d) of this section." No point would be served in holding a final hearing in this adversary proceeding when the proper outcome is established at the preliminary hearing and when the Debtor as plaintiff in the State action may have the opportunity to obtain injunctive relief in that forum.

For these reasons the Court has on this date entered an order modifying the stay and directing Dollarwatchers to file the appropriate application to intervene in the State Court action and to counterclaim to foreclose on the second mortgage on the Debtor's residence.