In the Matter of Robert and Julia HEN-RY, t/a Denville Ski, Boat & Sport Shop, Sea N' Ski Sports, Denville Boat, Ski & Sport Center, Denville Sport Shop & Boat Shop and Denville Sport Center, Debtors.

Bankruptcy No. 90–21811.

United States Bankruptcy Court,
D. New Jersey.

Sept. 15, 1993.

Williams, Caliri, Miller & Otley, P.C. by Daniel C. Fleming, Wayne, NJ, for debtors.

Mudge Rose Guthrie Alexander & Ferdon by Bruce H. Levitt, Parsippany, NJ, for Borough of Netcong, N.J.

Weinstock & O'Malley, P.A. by Stephen O'Malley, Clinton, NJ, for secured creditor Somerset Trust Co.

## *OPINION*

WILLIAM F. TUOHEY, Bankruptcy Judge.

On February 19, 1993, the borough of Netcong, a New Jersey municipality, filed a motion seeking to compel payment of its administrative expense claim for accrued real estate taxes on the debtors' property located in Netcong, or, in the alternative, for relief from the automatic stay in order to perfect its post-petition tax liens and proceed to a tax sale. The court held a hearing on Netcong's motion on March 22, 1993 and reserved decision, granting the parties additional time to submit supplemental briefs. On April 7, 1993, subsequent to the above motion being brought, the debtors filed a motion to sell the Netcong, New Jersey property, which was the subject of Netcong's motion, free and clear of liens pursuant to 11 U.S.C. § 363. The court held a hearing on May 4, 1993 to consider the debtors' motion and, in light of the court's pending decision on Netcong's earlier motion, reserved decision with the consent of all parties. As the within matters go to issues involving the administration of the estate, relief from the automatic stay, and the sale of property of the estate they are core proceedings as defined by Congress in 28 U.S.C. § 157 *et seq.* The within opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## *FINDINGS OF FACT*

The facts relevant to the within dispute are as follows:

1. The debtors, Robert and Julia Henry, t/a Denville Ski, Boat & Sport Shop *et al.* (hereinafter the "debtors") filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code on May 7, 1990.

2. The debtors are the owners of certain real property known as Block 27, Lot 4 on the tax map of the Borough of Netcong, and otherwise known as 16 Maple Avenue, Netcong, New Jersey (hereinafter the "property").

3. The movant, the Borough of Netcong (hereinafter the "borough"), is a municipality located in Morris County, New Jersey.

4. Somerset Trust Company (hereinafter "Somerset Trust") is the first mortgagee of the property holding an approximate secured claim of over $1.3 million.

5. At the time the debtors filed for bankruptcy, real estate taxes on the property for the 1989 and 1990 tax years were assessed but unpaid. According to the borough's tax collector, the total due for those years, with interest through February 26, 1993, is $43,296.33.[1]

6. In addition, post-petition real estate taxes for the property for 1991, 1992 and the first quarter of 1993 similarly remain assessed but unpaid. The amount due, including interest, through February 26, 1993, is $59,331.94.[2]

7. On May 18, 1992, this court entered a consent order modifying the automatic stay in order to permit Somerset Trust to proceed with a state foreclosure action against the property through final sheriff's sale. Rather than proceeding with a sheriff's foreclosure sale, however, Somerset Trust chose to allow the debtors to negotiate a sale under more favorable market conditions.

8. On February 19, 1993, the borough filed the within motion seeking to compel payment of the debtors' real estate taxes or, in the alternative, for relief from the auto-

[1].

| | | | | |
|---|---|---|---|---|
| 1989 | Tax: | $11,228.33 | Interest: | $6,546.87 |
| 1990 | Tax: | $17,382.00 | Interest: | $8,139.33 |

[2].

| | | | | |
|---|---|---|---|---|
| 1991 | Tax: | $18,164.19 | Interest: | $8,594.94 |
| 1992 | Tax: | $19,207.11 | Interest: | $8,501.52 |
| 1993 (1st Quarter) | Tax: | $4,801.78 | Interest: | $62.40 |

matic stay to perfect its post-petition tax liens on the property.

9. The debtors, joined by Somerset Trust, filed opposition to the borough's motion on March 8, 1993.

10. Meanwhile, despite Somerset Trust's willingness to allow the debtors to negotiate a private sale of the property, no offers were received for the asking price. Sometime thereafter, with no potential buyers in sight, Somerset Trust offered to purchase the property from the debtors for $900,000.00.

11. According to the debtors, Somerset Trust apparently agreed to purchase the property to avoid any dispute regarding the amount of credit to be issued to the debtors in the event that the property was sold at foreclosure sale.

12. On April 7, 1993, the debtors filed the within motion to sell the property to Somerset Trust free and clear of liens pursuant to 11 U.S.C. § 363. Under the terms of Somerset Trust's offer, Somerset Trust proposed to pay, in cash, any valid liens superior to the liens of Somerset on the property.

13. The borough filed an objection to the debtors' proposed sale on April 28, 1993.

14. On August 3, 1993, the court entered a consent order converting the debtors' case to chapter 7 effective August 11, 1993.

### DISCUSSION

The within matter presents a unique question of apparently first impression in this district. While all sides agree that the provisions of the automatic stay prevent the creation and perfection of municipal tax liens for post-petition real property taxes, *see Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.*, 884 F.2d 80, 86 (3d Cir.1989), the particular issue to be resolved is whether, and under what circumstances, if any, a municipality may be *granted relief from the automatic stay* in order to create and perfect tax liens for those unpaid post-petition real property tax assessments. Resolution of the within matter is facilitated by a brief review of the state of the law in this circuit as it pertains to the treatment of municipal tax liens in bankruptcy.

### Treatment of the Borough's Tax Liens in Bankruptcy

In *Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.*, the Third Circuit stated:

> The bankruptcy code permits tax liens to remain attached to secured property as of the date of the petition and entry of the stay. *See* 11 U.S.C. § 362. Where the liens are attached as of the date of the stay, the trustee has the power to sell the property free and clear of the liens by taking the liens out of the proceeds of sale. *See* 11 U.S.C. § 363(b). *The code also provides two options for payment of taxes that have not attained lien status as of the date of the entry of the stay. First, they may be payable by the trustee either as first priority administrative expenses, see 11 U.S.C. § 503(b)(1)(B)(i), or as seventh priority expenses, 11 U.S.C. § 507(a)(1).* Second, they may be payable by the secured creditor as payment for benefit received, *see* 11 U.S.C. § 506(c).

884 F.2d 80, 83 (3d Cir.1989) (emphasis added).

Under New Jersey law, "[t]axes on lands shall be a lien on the land on which they are assessed on and after the first day of January of the year for which the taxes are assessed, and all interest, penalties, and costs of collection which thereafter fall due or accrue shall be added to and become a part of such lien." *See* N.J.S.A. 54:5–6. Under this language then, municipal tax liens are both created and perfected on the same day. Thus, for bankruptcy purposes, municipal taxes assessed prior to the filing of a bankruptcy petition are created and perfected tax liens which must remain attached to secured property as of the date of the petition and entry of the stay. Accordingly, any sale of the property necessarily requires that the tax liens first be satisfied from the proceeds of sale. Taxes assessed *after* the bankruptcy petition has been filed, however, are not treated as tax liens but, rather, are relegated to administrative expense status.

In the case at bar, the borough is owed the total sum of $102,628.27 for accrued but unpaid real estate taxes on the debtors' property. Of this amount, $43,296.33 repre-

sents real estate taxes plus interest that were assessed and due prior to the debtors filing for bankruptcy protection. Thus, based on the above, the borough holds valid perfected municipal tax liens for the 1989 and 1990 real estate taxes that have remained unpaid.[3] *See Equibank*, 884 F.2d at 83, *see also Gline v. Horn & Company, P.C. (In re Isley)*, 104 B.R. 673, 676 (Bankr.D.N.J.1989). Conversely, tax liens do not exist for 1991, 1992 and the first quarter of 1993 taxes because the automatic stay barred the creation of post-petition tax liens.[4] Such post-petition taxes are characterized as administrative expenses.

Generally, treatment of post-petition taxes as administrative expenses does not lend itself to much concern since such a classification normally results in full payment of the taxes at the confirmation of a chapter 11 plan of reorganization. However, quite the opposite situation presents itself when the court is faced with a failed plan of reorganization. In such a case, as is present here, there may not be sufficient assets left in the estate to cover the borough's administrative tax claim. Furthermore, when, as here, the debtor is seeking to "sell" its real property to the secured creditor outside a plan of reorganization, the potential exists that the borough's claim for post-petition taxes will be lost forever since no amount of money will enter the estate from the sale of the asset to be used for payment of administrative expense claims.

3. Indeed, the debtors and Somerset Trust are willing to stipulate that the borough holds valid tax liens for the 1989 and 1990 real estate taxes.

4. Prior case law indicates municipalities have unsuccessfully argued that they fall within exceptions to the automatic stay. See e.g., *Makoroff v. City of Lockport*, 916 F.2d 890 (3d Cir.1990), *cert. denied*, 499 U.S. 983, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991); *Lincoln Savings Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Assoc., Inc.)*, 880 F.2d 1540, 1547 (2nd Cir.1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990).

5. The court notes that the borough has not yet availed itself of a possible 11 U.S.C. § 506(c) recovery for the taxes from the secured creditor. *See Equibank*, 884 F.2d at 83.

6. Somerset Trust concedes that it must pay the outstanding taxes for 1989 and 1990 since those liens were created and perfected pre-petition.

## Relief from the Automatic Stay

■ The borough's primary reason for bringing the within motion was to compel the payment of its administrative tax claims. However, as the debtors are unable to make any administrative payments at this time, and it is unlikely that any will be made in the future, the court must consider the borough's alternate request for relief from the automatic stay in order to perfect its real property tax liens for the post-petition years and proceed to tax sale on all of its lien claims.[5] In support of its position, the borough points out that if the court does not grant the requested relief, and allows the sale of the debtors' property to Somerset Trust to proceed, the borough's tax claim for 1991–93 will be effectively eliminated.[6] Granting relief from the automatic stay, on the other hand, will allow the borough to create and perfect liens for the 1991, 1992, and 1993 tax years, thereby ensuring payment of the outstanding taxes.[7]

■ Section 362(d) of the bankruptcy code, dealing with relief from the automatic stay, provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

However, Somerset Trust is unwilling to pay the borough's tax claim for the 1991–93 tax years arguing that it should be treated solely as an administrative expense payable in accordance with other claims in the bankruptcy proceeding.

7. The court notes that the borough's motion is seeking to "perfect" its municipal tax liens. This however mischaracterizes what the borough wishes to do. The automatic stay prevents both the creation and perfection of liens post-petition absent relief from the stay. 11 U.S.C. § 362(a)(4). Granting the borough's motion will enable the borough to *create* liens that otherwise would not exist. This is different from merely allowing relief from the stay to *perfect* already existing liens. However, the consequence of the borough's request is virtually the same since New Jersey law provides for the creation and perfection of municipal tax liens simultaneously.

(1) *for cause,* including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

>   (A) the debtor does not have an equity in such property; and

>   (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d) (emphasis added). The borough argues that it is entitled to relief from the automatic stay under both prongs of 11 U.S.C. § 362(d). Specifically, the borough contends that the requisite "cause" exists for purposes of § 362(d)(1) solely because of the debtors' inability to pay its administrative claim. Moreover, the borough asserts that § 362(d)(2)'s requirement of showing no equity and that the property is not necessary to an effect reorganization is also satisfied since: 1) the property is worth only $1.1 million but has a mortgage of $1.2 million; and 2) a plan of reorganization cannot be confirmed because of the debtors' admitted inability to pay their administrative claims which, pursuant to 11 U.S.C. § 1129(a)(9), must be paid in full on the effective date of the plan.[8] After reviewing all of the above facts, as well as the lengthy history of this terminal chapter 11, the court finds that the borough's request supports a finding of "cause" sufficient for purposes of granting relief from the automatic stay under § 362(d)(1).[9] Cause is determined on a case by case basis, and the bankruptcy court is vested with the discretion to find "cause" for reasons other than the denial of adequate protection. *See Dollarwatchers, Inc. v. Rutter (In re Rutter),* 25 B.R. 244, 247 (Bankr. E.D.Mich.1982).

When reviewing the facts of this case in conjunction with the overall effect of the bankruptcy system on municipal real estate taxes in general, it becomes apparent that there are a substantial number of reasons for granting relief from the automatic stay for "cause" that are in addition to the mere inability of the debtors to pay their administrative expenses. In the first place, any hope of reorganization of the debtors has disappeared and the debtors themselves have consented to the court conversion of their case to one under chapter 7. In this regard, the court notes that it is one thing to require that the creation of a municipality's tax lien is stayed while a *viable* chapter 11 reorganization is moving forward. In such a situation, the fundamental principles underlying the bankruptcy code require that a debtor be entitled to treat the payment of its taxes in the chapter 11 plan, with the option of spreading out their payment, in order to facilitate reorganization. It is quite another situation entirely, however, when the court is faced with a failed chapter 11 reorganization and the debtor is attempting to "sell" an asset outside the plan to its secured creditor, the result being that both the debtor and the secured creditor avoid any responsibility for the accrued real estate taxes merely by transferring title to property of the estate.

At least one commentator has noted the inconsistency created by the inability of a local municipalities to create and perfect their tax liens for accrued but unpaid postpetition property taxes in the situation presented here:

> Under the laws of most jurisdictions, a perfected real property tax lien has a super-priority status. That is, such a tax lien is generally superior to any mortgage, judgment, or other lien affecting the taxed premises. Based on this statutory framework, when a bank or other financial institution lends money and takes back a security interest in real property, its normal commercial expectation is that its lien will always be primed by the rights of the local taxing authority.

> Why should this result be altered by the intervention of a bankruptcy proceeding? If a secured creditor's lien is allowed to prime the liens of a taxing authority with respect to postpetition property taxes, the secured creditor will reap a windfall that it

---

8. In fact, now that the debtors' case has been converted to chapter 7, it is clear that no plan of reorganization will be put forward.

9. Accordingly, although the borough has made a strong argument for relief under § 362(d)(2), the court need not address those elements.

otherwise would not receive outside of bankruptcy. Stated differently, if real property is foreclosed on outside of bankruptcy, delinquent property taxes must be paid out of the sale proceeds. Under the current view of the majority of courts [**the Third Circuit included**] bankruptcy alters this result. Because the taxing authority cannot perfect its liens postpetition, the secured creditor keeps the entire sale proceeds, as opposed to the sale proceeds less the delinquent taxes. As a result, the taxing authority's claim for postpetition taxes is relegated to administrative expense status. Although this classification may nevertheless result in full payment of the taxes, if the debtor's estate is liquidated the taxing authority may never be paid.

Richards, Kevin Mark, "Property Taxes in Bankruptcy: Section 546(b), Section 506(c), and Lien Survival," Journal of Bankruptcy Law and Practice, Vol. 2, No. 5, pp. 286-87. Furthermore, the court also recognizes that municipalities are given special treatment for their real estate tax liens, not only under New Jersey state law, but also under the administrative priority provisions of the bankruptcy code. This special treatment is a result of lawmakers' awareness of the crucial importance of real estate taxes to the overall functioning of municipal government.[10] Thus, based on all of the above, the court concludes that the borough has satisfied the requirement of "cause" necessary to grant relief from the stay pursuant to § 362(d)(1). Accordingly, the borough is free to take whatever steps necessary to ensure that its

tax liens for 1991-93 are created and perfected against the property of the debtors.

## Debtors' Motion to Sell Property Free & Clear of Liens

 Because the court has granted the borough relief from the automatic stay in order to create and perfect its real estate tax liens in the property subject to the debtors' motion, and the court has entered a consent order converting the debtors' case to chapter 7, the debtors' motion to sell their Netcong property free and clear of liens is denied. Once the chapter 7 trustee conducts its review of the debtors' assets and liabilities, it will surely seek to abandon the property pursuant to 11 U.S.C. § 554. When the property is abandoned, title will vest back in the debtors, and, accordingly, any sale of the property to Somerset Trust will be free to proceed outside bankruptcy.[11]

## CONCLUSION

Based on the foregoing, the borough of Netcong's motion seeking relief from the automatic stay to create and perfect its municipal tax liens for the accrued post-petition taxes on the debtors' property is granted. The debtors' motion to sell the Netcong property to Somerset Trust Company free and clear of all liens is denied.

---

**10.** For example, the municipality in our present case has continued services funded by taxation, such as police and fire protection, which has preserved the value of the bankruptcy estate. Since payment has not been made, the municipality is forced to raise an amount equivalent to the uncollected taxes by burdening other municipal residents with increased taxes.

**11.** In opposing the borough's request for relief from the stay, the debtors had argued that, pursuant to § 545(2), they could avoid the fixing of the borough's liens on the property since the liens obviously did not exist and thus could not be "perfected or enforceable" as of the commencement of the case. *See* 11 U.S.C. § 545(2) (emphasis added). While the court recognizes that the debtors may have had a strong argument in a chapter 11 context, the fact remains that the

case has now been converted to chapter 7. With the case converted to chapter 7, and a chapter 7 trustee in place, the debtors' power to avoid the borough's liens is no longer a concern. Moreover, once the property is abandoned, it ceases to be a part of the bankruptcy estate, reverts to the debtor and stands as if no bankruptcy petition has ever been filed. *See Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 590 (10th Cir.1990), *affirmed*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Accordingly, with the property no longer part of the estate, the borough, using the relief from the automatic stay which it has obtained, can simultaneously create and perfect its post-petition tax liens under normal operation of state law, without fear of the liens being avoided.