**In re EASTERN STEEL BARREL CORPORATION and E & C Holding Company, Debtors.**

**E & C HOLDING CO., A New Jersey corporation, Plaintiff,**

**v.**

**TOWNSHIP OF PISCATAWAY and National Westminster Bank, NJ, Defendants.**

**Bankruptcy Nos. 90–35196, 90–35200. Adv. No. 93–3315.**

United States Bankruptcy Court, D. New Jersey.

March 2, 1994.

---

Gary N. Marks, Ravin, Greenberg & Marks, P.A., Roseland, NJ, for plaintiff E & C Holding Co.

Howard Gran, Abrams, Blatz, Gran, Hendricks & Reina, South Plainfield, NJ, for defendant Piscataway Tp.

Richard N. Shaine, Stark & Stark, Princeton, NJ, for defendant Nat. Westminster Bank, NJ.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

### I.  INTRODUCTION

This constitutes the court's decision on cross-motions by plaintiff, E & C Holding Company ("debtor" or "E & C") and defendant Township of Piscataway ("Piscataway") for partial summary judgment as to the first and second counts of the complaint filed by the debtor in this adversary proceeding. The first count seeks a determination of the validity and priority of certain alleged liens for real property taxes and sewer charges (hereinafter referred to collectively as the "property taxes" or "taxes") owed to defendant Piscataway Township ("Piscataway"). The second count seeks a determination of the applicable interest rate on such taxes, and a subordination of penalties on the taxes under section 510(c) of title 11, United States Code ("Bankruptcy Code" or "Code"). The primary issues raised by the motions are the criteria for charging property taxes to a mortgagee under Code section 506(c) and the applicable rate of postpetition interest on such taxes.

This court has jurisdiction under 28 U.S.C. §§ 1334(b), 151 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and (O). Piscataway's motion is granted and the debtor's motion is denied for the reasons set forth below.

### II.  FACTS AND PROCEDURAL HISTORY

The basic facts are undisputed. The debtor filed a petition for relief under chapter 11 of the Code on November 20, 1990. The debtor's principal asset was a 22–acre parcel of real property in Piscataway, New Jersey ("the property"). The debtor leased approximately 12 of the 22 acres to Eastern Steel Barrel Corporation ("Eastern"), a related corporation which operated a manufacturing facility on the premises. Eastern also filed a petition for relief under chapter 11 on November 20, 1990, and the cases have been jointly administered. Eastern ceased operations in February 1991 and discontinued its lease payments to E & C for the property. E & C therefore ceased payment of its prop-

erty taxes to Piscataway, which were also in arrears before the petitions were filed. E & C then filed a plan of liquidation which provided for sale of the property and distribution of the proceeds to creditors. The hearing on confirmation of the plan has been adjourned pending the outcome of this adversary proceeding.

Defendant National Westminster Bank ("Natwest") held a mortgage on the property. The court entered an order on June 5, 1991 determining that the amount due on Natwest's mortgage as of that date was $1,509,964.66.

The property was on the market for more than two years. On April 7, 1993 the court entered an order approving the sale to a third party of the 12 acres which had been leased to Eastern for $2,200,000. The sale was free and clear of liens, with liens attaching to the sale proceeds. Natwest retained its mortgage on the remaining 10 acres, which are still on the market. The order approving the sale stated that upon consummation of the sale, Natwest was to be paid $1,749,136.18, which included interest through the closing. However, the amount due to Piscataway as of the closing for the property taxes, interest and penalties was $438,481.11. An escrow was established in that amount at the closing on April 26, 1993 pending the outcome of this adversary proceeding. Natwest was paid $1,500,000. from the sale proceeds.[1] Natwest was also paid $100,000. by the father of Andrew Campbell, a principal of the debtor and guarantor of the debt to Natwest, in consideration of Natwest's agreement to suspend efforts to collect from Mr. Campbell through November 1993.

On October 20, 1993 the court entered an order declaring that Piscataway held a first priority lien for prepetition taxes in the amount of $37,374.18 and authorizing payment of that amount from the escrow. The remaining amount of approximately $401,000. in the escrow represents postpetition taxes and pre- and postpetition interest and penalties.

---

1. The remainder of the purchase price after the payment to Natwest and the escrow for taxes was

## III. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c), which is incorporated by reference in Fed.R.Bankr.P. 7056. The parties agree that there are no genuine issues of material fact in this case.

## IV. THE POSTPETITION PROPERTY TAXES ARE NOT SECURED BY A LIEN

■ Piscataway argues that the postpetition property taxes are secured by a lien. It has been held by the United States Court of Appeals for the Third Circuit, however, that real property taxes which become due after a bankruptcy petition is filed are not secured by liens. *Equibank, N.A. v. Wheeling–Pittsburg Steel Corp.*, 884 F.2d 80, 84 (3d Cir. 1989). It is therefore no longer open to question in this Circuit that real property taxes which become due postpetition are not secured by liens.

## V. THE POSTPETITION PROPERTY TAXES CAN BE RECOVERED FROM THE PROCEEDS OF NATWEST'S MORTGAGE UNDER CODE SECTION 506(c)

■ The parties' primary dispute here is over whether the property taxes can be recovered from the proceeds of Natwest's mortgage under Code section 506(c). That section states:

the trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

Although section 506(c) confers such rights on a trustee, the Third Circuit has held that individual creditors can also assert claims under that section. *In re McKeesport Steel Company*, 799 F.2d 91 (3d Cir.1986). The debtor does not dispute Piscataway's stand-

used for a broker's commission, NJDEPE financial assurance, and closing costs.

ing to assert the subject claims under section 506(c).

The Third Circuit held in *Wheeling–Pittsburg, supra,* that municipalities may be able to recover postpetition property taxes from the proceeds of a mortgage under section 506(c). *Id.* at 83. The Third Circuit remanded the case to the bankruptcy court, however, for a determination of whether the taxes were reasonable, necessary expenses of preserving or disposing of the property which benefitted the mortgagee.

There is no argument here that the taxes were not reasonable, and there should effectively be an irrebuttable presumption that the amounts of such taxes are reasonable unless such amounts are changed in the manner provided by applicable nonbankruptcy law.

As to the necessity of the taxes relative to preservation and sale of the property, the Third Circuit stated in *Wheeling–Pittsburg, supra,* that

It would seem that payment of the taxes was necessary for disposal of the [postpetition] real property taxes pursuant to the sale contract, which promised a marketable and insurable title.

*Id.* at 86. The Third Circuit then noted, however, that ". . . it is less clear what benefit the secured creditor derived from payment of those taxes." *Id.* The court then remanded for a determination of those issues.

In this case, Natwest was the party which derived the primary benefit from the sale of the property because the sale liquidated part of Natwest's collateral, resulting in payment of most of the amount due on the mortgage. The only other creditor who benefitted directly was Piscataway, whose prepetition tax lien was also paid. Moreover, the lengthy period of time during which the debtor had the property on the market also benefitted Natwest by ensuring that the best available

price was obtained for the property. During the marketing period, the subject taxes accrued. Because such accrual was unavoidable, it was also a necessary cost of marketing the property to obtain the best available price. Moreover, the municipal services for which the taxes are assessed also benefitted Natwest by enhancing the value of the property. The certification of Joan Dambach, Piscataway's tax assessor, states:

A property not serviced with fire and police protection, certain municipally provided utilities, a paved road, etc. would generally be assessed lower than an identical property with all such improvements and services. If the Eastern Steel building were literally picked up and transported to an identical lot miles from a paved road, without public water and with no street lights, etc., its value would be diminished and it would certainly bring a lower price on the real estate market.

Dambach cert., ¶ 4.

Natwest argues that even if certain municipal services such as fire protection benefitted its collateral, the portion of the taxes attributable to other services such as the Piscataway School District did not.[2] This argument has some force, but it ultimately fails. The entire amount of the taxes were necessarily incurred while the property was being preserved and marketed by the debtor. Because the taxes in question were incurred postpetition, they would be administrative expenses of the estate under Code section 503(b)(1), which are entitled by Code section 507(a)(1) to priority in payment before any unsecured claims. However, no unsecured creditor derived any direct benefit from the sale. If the court determines that part of the municipal services did not benefit Natwest, then the estate would have to bear part of the costs of a marketing effort which ultimately benefitted Natwest, not the unsecured creditors. That would be inequitable.[3]

---

2. The certification of Edward Wanzie, Piscataway's tax collector, states that the current tax rate is $2.81 per $100. of assessed value, which is disbursed as follows:

| | |
|---|---|
| Middlesex County | $ .59 |
| Township of Piscataway | .42 |
| Piscataway School District | 1.72 |

| | |
|---|---|
| Fire District | .08 |
| Total | $2.81 |

Wanzie cert. ¶ 2.

3. The fact that the unsecured creditors may derive a benefit from the sale of the remaining 10 acres does not change this conclusion. Although the debtor believes there will be such a benefit,

It would also provide a windfall to Natwest. If Natwest had obtained relief from the automatic stay under Code section 362(d) and foreclosed on its mortgage, property taxes accruing after termination of the stay would once again be secured by a first lien on the property. Unsecured creditors who have not benefitted from a sale of collateral should not have to bear expenses necessarily incurred in preserving and disposing of such collateral in bankruptcy where the secured creditor could not avoid such expenses outside of bankruptcy. As the Fourth Circuit has noted in this context,

> That secured creditor would be reaping a pure windfall. The obligation of the mortgagee to pay the taxes, even those which mature only after foreclosure, but before distribution of the proceeds, was an established, recognized duty before the mortgage loan was ever made. The mortgagee realized that it would have to meet such taxes if the need to foreclose should ever arise. Consequently, if, as a consequence of bankruptcy of the borrower, the real estate taxes could be avoided, pure manna from heaven in the form of an unanticipated and unmerited benefit would arise in the mortgagee's favor, and no Congressional objective would be served.

*Maryland National Bank v. Mayor and City Council of Baltimore (In re Maryland Glass Corp.)*, 723 F.2d 1138, 1145 (4th Cir.1983). Cases cited by the debtor and Natwest to the contrary are factually distinguishable or unpersuasive. The court therefore concludes that the entire amount of Piscataway's postpetition property taxes and sewer charges are actual, necessary expenses of preserving and disposing of Natwest's collateral which benefitted Natwest and which are therefore recoverable from Natwest under Code section 506(c).

## VI. PISCATAWAY IS ENTITLED TO INTEREST AND PENALTIES AT THE STATUTORY RATES UNDER CODE SECTION 506(c)

■ The debtor and Natwest argue that Piscataway is not entitled to interest at all on

its postpetition taxes. The courts have split on this issue. 3 *Collier on Bankruptcy* ¶ 503.04[1][c] (15th Ed.). This court concludes that the more persuasive view is that a taxing authority is entitled to interest on postpetition taxes, for the reasons stated in *U.S. v. Friendship College, Inc.*, 737 F.2d 430 (4th Cir.1984) and *Matter of Peter Del Grande Corp.*, 138 B.R. 458 (Bankr.D.N.J. 1992). The same is true for penalties. *U.S. v. Friendship College, Inc., supra.*

The debtor and Natwest argue that if Piscataway is entitled to interest on postpetition taxes, it should be computed at the federal judgment rate or a market rate. Piscataway argues that it is entitled to interest at the higher statutory rate authorized by N.J.S.A. 54:4–67. The court concludes that since the Bankruptcy Code does not specify the interest rate for postpetition taxes, the interest rate provided by applicable nonbankruptcy law applies. In this case, that is the rate authorized by N.J.S.A. 54:4–67. *Matter of Isley*, 104 B.R. 673, 680 (Bankr.D.N.J.1989).

## VII. CONCLUSION

To summarize, the court holds that Piscataway has a claim against Natwest under Code section 506(c) for all postpetition taxes, sewer charges, interest and penalties. The court also holds that all pre- and postpetition interest shall be allowed at the rates authorized by N.J.S.A. 54:4–67. The debtor shall pay the amounts due to Piscataway from the escrow established at the closing of the sale of the property.

The attorney for Piscataway shall submit an order within five days on notice pursuant to D.N.J.Bankr.Ct.R. 4(c) and (d).

---

the remaining property has not been sold after having been on the market for more than two years. Under these circumstances, any benefit to the unsecured creditors from sale of the subject 12 acres is speculative. If Natwest were paid in full from this sale, part of the property taxes

which accrued during the marketing period would be borne by the estate unless and until the debtor actually succeeds in selling the remaining 10 acres for a price which exceeds the remaining amount due on Natwest's mortgage.