HAMILL, J.T.C.
The principal issue in this ease is whether an assessment of rollback taxes made after the filing of a petition in bankruptcy violates the automatic stay arising under § 362 of the Bankruptcy Code (“Code”), 11 U.S.C. § 362(a). Additional issues are (1) whether the county board’s notice of intent to assess rollback taxes was fatally defective, (2) whether a cessation of farming constitutes a change in use sufficient to invoke rollback taxes when the taxpayer is in bankruptcy, and (3) whether Clinton Township is barred by principles of estoppel from assessing rollback taxes because it failed to raise its tax claim in the bankruptcy court when United Jersey Bank (“UJB”) allegedly could have taken steps to protect its interests.
For the reasons to be discussed, I conclude that the rollback tax assessment itself does not violate the automatic stay. However, by reason of the stay, the township’s lien for rollback taxes is void. Under the facts of this case, because there is no hen, the township cannot enforce collection of the rollback taxes unless the stay is *587 annulled by the bankruptcy court. As to the additional issues, (1) the notice of intent to assess rollback taxes was not defective, (2) a cessation of farming while a taxpayer is in bankruptcy is a change in use that triggers rollback taxes, and (3) Clinton Township is not estopped from assessing rollback taxes by reason of its inaction in the bankruptcy court.
In April 1988 Alpha-Bella borrowed $1,225,000 from R.D.S. Realty Inc., securing the loan by a mortgage on the subject property. R.D.S. in turn borrowed $800,000 from plaintiff UJB, securing the loan by an assignment of its mortgage from Alpha-Bella. Alpha-Bella subsequently defaulted on the mortgage; UJB filed a foreclosure action in the Superior Court, and on May 24, 1990 a final judgment of foreclosure was entered in favor of UJB.
On January 14,1991, the date scheduled for the sheriffs sale of the subject property, Alpha-Bella filed a petition in bankruptcy in the Bankruptcy Court for the District of New Jersey. The petition was filed under Chapter 11 of the Bankruptcy Code and was served upon Clinton Township. UJB filed a secured proof of claim in the bankruptcy proceeding indicating that Alpha-Bella was indebted to it in the amount of $1,085,742.01. In April 1993 the bankruptcy court vacated the automatic stay with respect to the subject property so as to permit UJB to proceed with the sheriffs sale. In the same order, the bankruptcy court converted the Chapter 11 reorganization proceeding to a Chapter 7 liquidation. The sheriffs sale took place, and a sheriffs deed was delivered on February 25, 1994, to Pipco Ashley, Inc., which appears to be a wholly owned subsidiary of UJB.
In October 1991 the tax assessor of Clinton Township inspected the property. He found that the parcel was densely overgrown and saw no farming activity. Although it had been assessed as farmland in the past, no application for farmland assessment was filed for the 1992 tax year, and so the property received a “regular” assessment as vacant land for the 1992 tax year.
Between January and July 1992, the assessor made additional inspections and saw no agricultural activity. On July 16,1992, the *588 Hunterdon County Board of Taxation issued a notice indicating that the Clinton Township assessor intended to levy rollback taxes on the property for the 1990 and 1991 tax years because there was “no agricultural activity.” On August 14, 1992 the county board issued a judgment assessing rollback taxes on the property for the 1990 and 1991 tax years. The county board judgment indicated that the true value of the property for 1990 was $1,479,900 and.for 1991 was $1,331,900.
In late September 1992 UJB timely filed a complaint in the Tax Court on behalf of AIpha-Bella challenging both the denial of farm qualified status and the value of the property as determined by the county board. The rollback taxes remain unpaid.[1]
The township subsequently moved to dismiss the complaint, among other things, for lack of standing. In response to the motion relying on Chemical Bank New Jersey, N.A. v. Absecon, 13 N.J.Tax 1 (1992), I ruled that UJB, as assignee of the mortgagee, had standing to pursue the tax appeal on the property that secured the mortgage loan. At the same time, I declined to issue an order or permit the case to proceed pending an order from the bankruptcy court agreeing that the New Jersey Tax Court should determine the tax appeal, including the question of whether the county board judgment imposing rollback taxes was void as viola-tive of the automatic stay.
My concern was prompted by Code § 362(a)(1) and Code § 505(a)(1) of the Bankruptcy Code. Under Code § 362(a)(1), the Tax Court proceeding, if not authorized by the bankruptcy court, might have been void as the “continuation ... of a proceeding against the debtor” in violation of the automatic stay. Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1206 (3rd Cir.1991) (“automatic stay suspends any non-bankruptcy court’s authority to continue judicial proceedings then pending against the debtor”; judicial actions and proceedings in violation of automatic stay are void ab initio); H & H Beverage Distributors v. Depart *589 ment of Revenue of Pa., 850 F.2d 165, 168 n. 2 (3rd Cir.) (“[W]e question whether H & H may pursue its state administrative tax remedies during the pendency of the automatic stay without permission of the bankruptcy court.”), cert. denied, 488 U.S. 994, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988); Matter of Cappadonna, 154 B.R. 639 (Bankr.D.N.J.1993) (foreclosure judgment entered by New Jersey trial court while automatic stay was in effect was void). Moreover, in view of the bankruptcy court’s concurrent jurisdiction over the township’s tax claim under 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a) and (b) and its power under Code § 505(a)(1) to determine the “amount or legality” of the rollback tax assessment, either party could have sought removal of the case to federal court. 28 U.S.C. § 1452(a).
In December 1993 the bankruptcy court issued an order authorizing the New Jersey Tax Court to “fully dispose of the pending New Jersey State Court property tax appeal relating to the property, such proceeding to adjudicate all issues raised by that proceeding under the United States Bankruptcy Code ... including but not limited to, the issue of ... the effect of the automatic stay in this ease [on] Clinton Township’s filing of a notice of assessment of rollback taxes with the Hunterdon County Board of Taxation and the judgment of the Hunterdon County Board of-Taxation affirming the assessment of rollback taxes on the property.” The order continues that the bankruptcy court and all parties to the proceeding will be bound by a judgment of the New Jersey Tax Court or any appellate court reviewing the Tax Court’s judgment.
As a result of the bankruptcy court’s order authorizing (but not directing) this court, under the unique facts of this case, to decide all the bankruptcy issues raised in this tax appeal, I will address issues not generally discussed in a local property tax case. I do so because it would be futile to decide the state law issue, namely the value of the subject property for local property tax purposes, without first deciding whether the assessment is void as a result of the automatic stay. While it might be argued that the court should not address the further issue of the validity of the town *590 ship’s hen because the hen relates to the collectibility of the tax, not the validity of the assessment, I nevertheless mil reach that issue. Under the peculiar facts of this case, the failure to do so would create a false impression that the township’s taxes are not affected by the automatic stay, which in turn would most likely affect the outcome of the state law issues or needlessly prolong the litigation. In short, while this court normally would not decide bankruptcy law issues and cannot be compelled to do so by the bankruptcy court, in this case the bankruptcy court has authorized me to do so, and I am in full agreement because the state law issues that I must decide cannot be properly resolved without first deciding the entwined bankruptcy issues.
I.
The first issue to be determined is whether the county board’s notice of intent to invoke rollback taxes was defective. If it was, the validity of the assessment would be questionable and the bankruptcy issue might not have to be addressed.
Plaintiff argues that the notice was defective in failing to indicate the location, date, and time of the county board hearing, failing to show a mailing date, and failing to reflect service by certified mail, all in violation of N.J.S.A. 54:4-63.13. In response, defendant attaches a copy of the actual notice that was purportedly mailed to AIpha-Bella and was attached as an exhibit to plaintiffs complaint.
The copy complies in all respects with the statute, including certified mailing. It specifies the location, date and time of the hearing, identifies the property, specifies the years and amounts of the proposed assessments, identifies the assessor, and is signed by the county tax administrator. The copy of the notice attached to the complaint includes a handwritten notation reflecting the number of the certified mail receipt and the date July 16, 1992. The postmark on the certified mail receipt is illegible, but shows a delivery date of July 17,1992, and the township maintains that the notice was mailed on July 16. The illegibility of the postmark date is not material because the date of actual delivery is indicat *591 ed, and that date, July 17,1992, amply complies with the requirement of N.J.S.A 54:4-63.13 that a taxpayer receive at least 15 days advance notice of the hearing. (The hearing was scheduled for August 12, 1992.)
Plaintiff nevertheless argues that the contents of the notice actually sent to Alpha-Bella have not been verified. While that may be so, defendant maintains that the copy in the county board’s files is the same as the notice sent to plaintiff. In the absence of any evidence to the contrary, defendant’s assertion is plausible and will be accepted as true. Accordingly, as the notice of intent to invoke rollback taxes complied in all respects with N.J.S.A 54:4-63.13, notice of the proposed assessment was properly given, and the assessment cannot be successfully challenged on that basis.
II.
The automatic stay that arises under Code § 362(a) “ ‘is one of the fundamental debtor protections provided by the bankruptcy laws.’ ” H & H Beverage Distributors v. Department of Revenue of Pa., supra, 850 F.2d at 166 (quoting from H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6296). “Its essential purpose is twofold: (1) to protect creditors and thereby promote the bankruptcy goal of equal treatment; and (2) to give the debtor a breathing spell.” H & H Beverage Distributors, supra, 850 F.2d at 166 (citations omitted). “Section 362[ (a) ] provides for a broad stay of litigation, lien enforcement, and other actions, judicial or otherwise, which would affect or interfere with property of the estate, property of the debtor, or property in the custody of the estate.” 2 Collier on Bankruptcy, § 362.01, at 362-8 to -9 (L. King ed. 1988). The stay applies to “all entities,” including governmental units. Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp., 884 F.2d 80, 86 (3rd Cir.1989). Exceptions to the stay are listed in Code § 362(b).
Under § 362(a)(4) the filing of a bankruptcy petition operates as a stay of “any act to create, perfect, or enforce any lien against property of the estate[.]”
*592 Plaintiff asserts that the county board judgment assessing rollback taxes was an “act to create ... [a] lien against property of the estate” and is therefore barred under Code § 362(a)(4) because the stay went into effect on January 14, 1991, and the county board judgment was not issued until August 14, 1992. Additionally, according to plaintiff, the township’s rollback tax lien is barred because, pursuant to N.J.S.A 54:4-23.9 and N.J.S.A. 54:4-63.20, the lien would not have arisen until January 1, 1992, and Code § 362(a)(4) prevents any post-petition lien from arising against property of the estate.
In defense of the rollback tax assessment, the township maintains that, due to the fact that farmland assessment is a “tax deferral,” the township had an interest in the property that arose before the petition in bankruptcy was filed and that the perfection of an interest in property that arises prior to bankruptcy is specifically excepted from the automatic stay under Code § 362(b)(3).
A.
Although not addressed by either party, the first question is whether the county board proceeding that resulted in the imposition of rollback taxes is an administrative proceeding against the debtor that could have been commenced before the filing of the bankruptcy petition or was initiated to recover a claim against the debtor that arose before the filing of the bankruptcy petition. If so, the proceeding was barred under Code § 362(a)(1) unless there is an applicable exception to the stay under Code § 362(b).
Under Code § 362(a)(1), the filing of a bankruptcy petition operates as a stay of:
the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title!.]
The county board hearing was clearly an administrative proceeding. County tax boards are administrative agencies that “ ‘exercise gwasi-judicial jurisdiction’ ” in hearing tax appeals. *593 Union City Assocs. v. Union City, 115 N.J. 17, 22, 556 A.2d 769 (1989) (quoting Vicari v. Bethlehem Township, 8 N.J.Tax 513, 518 (1986)). See Bluebook p. 44.
The procedure by which rollback taxes are assessed is a proceeding against the taxpayer, here the debtor Alpha-Bella. Rollback taxes are collected in the same manner as omitted property tax assessments. N.J.S.A 54:4-23.9. Although omitted assessments are made pursuant to two methods — the original method of N.J.S.A 54:4 63.12 to -63.30 and the alternative method pursuant to N.J.S.A 54:4-63.31 to -63.40 — for purposes of rollback taxes, only the original method N.J.SA 54:4-63.12 to -63.30 is applicable. Atlantic City Dev. Corp. v. Hamilton Tp., 3 N.J.Tax 363 (1981). Under the original method, an omitted assessment (or rollback tax assessment) is initiated by the filing of a written complaint with the county board of taxation or by a resolution of the county board on its own motion. N.J.SA 54:4-63.13. The county board gives notice to the property owner, holds a hearing, and renders a judgment assessing the tax. N.J.SA 54:4-63.13, -63.14 and -63.15. Since the proceeding is initiated against the taxpayer by the filing of a complaint or resolution, the proceeding is “against the debtor” within the meaning of Code § 362(a)(1). The fact that, as was done here, the debtor thereafter appeals the judgment does not change the fact that the original proceeding was against the debtor. See, e.g., Association of Saint Croix Condo. Owners v. Saint Croix Hotel Corp. 682 F.2d 446, 449 (3rd Cir.1982).[2]
The question then becomes whether the rollback tax proceeding could have been commenced against Alpha-Bella prior to January *594 14,1991 and whether the township’s claim for rollback taxes arose prior to that date.
In Matter of M. Frenville Co., Inc., 744 F.2d 332 (3rd Cir.1984), cert. denied, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), the Third Circuit held that, for purposes of determining when a claim arises or when a proceeding could have been commenced under Code § 362(a)(1), the critical point is the point when an action could have been filed or a right to payment, albeit contingent, arose, not when the act of the debtor occurred that ultimately triggered the action or proceeding. The case involved an accounting firm that was sued post-petition in state court by creditors of the debtor, who alleged that the accounting firm had been negligent in preparing the debtor’s financial statements. In response to the creditors’ suit, the accounting firm sought relief from the automatic stay in order to include the debtor as a third party defendant in the state court action, the purpose being to obtain indemnification in the event the creditors prevailed. The Third Circuit concluded that the automatic stay did not apply to the third party complaint because the cause of action for indemnification could not have been commenced under New York law until the accounting firm filed its answer in the creditors’ suit, a date that was well past the bankruptcy filing. Frenville, supra, 744 F.2d at 335-36. As to whether the claim by the accounting firm arose pre-petition, the court held that the Bankruptcy Code’s definition of “claim” requires in all instances that there be a “right to payment” and concluded that the firm’s contingent right to contribution from the debtor did not arise under New York law until the firm had served its answer in the creditors’ suit.[3] Id. at 336-37.
Under N.J.S.A. 54:4-23.8, land becomes subject to rollback taxes when it is no longer- used for agricultural or horticultural *595 purposes. Rollback taxes are assessed in the year of change in use and apply to the year of change in use and the two preceding tax years. N.J.S.A. 54:4-23.8; New Jersey Turnpike Auth. v. Washington Tp., 137 N.J.Super. 543, 551, 350 A.2d 69 (App.Div. 1975), aff'd o.b., 73 N.J. 180, 373 A.2d 652 (1977). The burden of establishing a change in use so as to subject land to rollback taxes is on the assessor. Miele v. Jackson Tp., 11 N.J.Tax 97, 99 (App.Div.1989).
Although the facts suggest that the subject property had ceased being farmed well before 1991, it was not until October 1991 that the assessor first inspected the property, and it was not until 1992 that the assessor determined definitively that there had been a change in use sufficient to invoke rollback taxes. Under Frenville, the earliest that the Clinton Township assessor could have commenced a proceeding to invoke rollback taxes was October 1991 when he first inspected the property, a date that was approximately nine months after the bankruptcy petition was filed. By analogy to Frenville, the township’s contingent right to payment of rollback taxes did not arise until the county board issued its notice of intent to assess rollback taxes on July 16, 1992. Under Frenville, the fact that Alpha-Bella may have ceased farming long before the bankruptcy petition was filed is not determinative because it is not the acts of the debtor that determine when a proceeding could have been commenced and when a claim arose but rather the points in time at which the cause of action could have been instituted and a right to payment arose. As neither of these points occurred prior to January 14, 1991, the township’s rollback tax assessment is not stayed under Code § 362(a)(1) of the Bankruptcy Code.
Nor is it significant that the “damages”, i.e., the rollback tax assessments, reach back to calendar years predating the bankruptcy filing, i.e., the 1990 and 1991 calendar years. In In re Christensen, 95 B.R. 886 (Bankr.D.N.J.1988), the court held that the Division of Motor Vehicles’ right to payment of certain surcharges arose when the debtor was convicted of refusing to submit to a breathalyzer test, a date that predated her petition in *596 bankruptcy. The fact that the surcharges were spread over three years, two of which postdated the petition in bankruptcy, had no bearing on when the claim arose. Id. at 895. By a parity of reasoning, the fact that the rollback taxes were assessed for pre-bankruptcy years is not determinative because the claim for those taxes did not arise and the proceeding to assess those taxes could not have been commenced until after the petition was filed.
B.
The next questions are whether the county board judgment was an act to create a lien against property of the estate and if so whether the assessment itself or only the township’s lien is void under Code § 362(a)(4). If only the lien is questionable, is the lien nevertheless sustainable under the township’s theory that it had a pre-petition interest in the property due to the deferral of the taxes as a result of the 1990 and 1991 farmland assessments?
The answers to most of these questions are suggested in the Third Circuit’s opinions in Equibank, N. A. v. Wheeling-Pittsburgh Steel Corp., supra and H & H Beverage Distributors v. Department of Revenue of Pa., supra. The central question in Equibank was whether pre-and post-petition property taxes incurred under West Virginia law should be borne by the bankruptcy estate or the secured creditors out of the proceeds of sale of the collateral. The taxpayer Wheeling-Pittsburgh Steel filed a petition in bankruptcy on April 16, 1985. The bankruptcy court subsequently approved the sale of the debtor’s steel making facility.. At the closing the issue arose as to who was responsible for the 1985 and 1987 property taxes (the 1986 taxes having been paid by the debtor). Equibank and the other secured creditor took the position that the taxes should be paid as an administrative expense out of the funds of the estate, while the debtor maintained that the taxes should be paid by the secured creditors out of the sale proceeds. Equibank, 884 F.2d at 82.
The Third Circuit reasoned that under Code § 362, tax liens that have attached as of the date of the automatic stay remain in force and are not affected. If a tax has not achieved lien status as *597 of the date of the stay, i.e., the filing of the petition in bankruptcy, the lien does not attach but the taxes may be paid either as administrative expenses or in certain circumstances by a secured creditor under Code § 506(c). Under West Virginia law, the lien for real property taxes attaches on July 1 for taxes payable during the next ensuing fiscal year. Thus the lien for 1985 real property taxes attached on July 1, 1984, and, since the stay did not go into effect until April 16,1985, the 1985 tax claims were unaffected and were payable by the secured creditors. On the other hand, since the lien for 1987 real property taxes did not attach until July 1, 1986, well after the bankruptcy filing, the 1987 real property tax claims did not become liens as a result of the automatic stay. Id. at 83-85. Significantly, the Third Circuit did not state that the 1987 real property tax assessment itself was void as an act to create a lien. It was only the lien itself that was interdicted by Code § 362(a)(4).
' The fact that no lien arose -for the 1987 taxes did not, however, conclude the matter. The Third Circuit went on to hold that the taxes were payable either as administrative expenses of the estate pursuant to Code § 503(b)(1)(B)© or possibly by the secured creditors under Code § 506(c). Id. at 87. The latter section provides:
The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.
[ 11 Ü.S.C. § 506(c) ]
The court in Equibank remanded the case to determine whether the taxes were payable as an administrative expense or by the secured creditors pursuant to Code § 506(c).[4] Ibid.
*598 In H & H Beverage Distributors v. Department of Revenue of Pa., supra, the Third Circuit concluded that, although the issuance of a sales tax deficiency assessment was a step toward the creation of a lien, it was excepted from the automatic stay under Code § 362(b)(9) as a notice of tax deficiency. Section 362(b)(9) excepts from the automatic stay “the issuance to the debtor by a governmental unit of a notice of tax deficiency.” The court in H & H Beverage reasoned that Pennsylvania’s notice of sales tax assessment was similar to a federal notice of tax deficiency. Under Pennsylvania law, no lien could arise until the taxpayer’s administrative appeal was resolved, the Commonwealth demanded that the tax be paid, and the taxpayer refused.
While the lien for rollback taxes arises automatically under N.J.S.A. 54:4-63.20 and is thus in some ways distinguishable from the sales tax lien at issue in H & H Beverage, nevertheless, the Third Circuit in Equibank involving West Virginia property taxes and in its more recent decision in In re C.S. Assocs., 29 F.3d 903 (3rd Cir.1994), involving Philadelphia real estate taxes, has treated the tax assessments themselves as valid. Moreover, in In re Eastern, Steel Barrel Corp., 164 B.R. 477 (Bankr.D.N.J.1994), on motion to vacate order, 175 B.R. 539 (Bankr.D.N.J.1994) and Matter of Henry, 173 B.R. 878 (Bankr.D.N.J.1993), both involving New Jersey local property taxes assessed post-petition, the court assumed that the assessments themselves did not violate the automatic stay and went on to deal with the question of the validity of the taxing district’s post-petition liens.
The issuance of a county tax board judgment assessing rollback taxes is tantamount to the issuance of a notice of federal tax deficiency. The rollback tax assessment establishes the existence and amount of the local government’s claim, thereby enabling the taxing district to file a proof of claim in the bankruptcy court. Without a county board judgment, there is no rollback tax assessment. See N.J.S.A. 54:4-63.15. The judgment gives notice *599 to the taxpayer debtor of the assessment and commences the 45-day period in which the taxpayer may appeal to the Tax Court. N.J.S.A. 54:4-63.23; N.J.S.A. 54:51A-9a. Since the county board’s rollback tax judgment was tantamount to a notice of deficiency, it was excepted from the automatic stay under Code § 362(b)(9).[5]
Although not argued by plaintiff, the bankruptcy court’s order raises the further question whether the notice of intent to assess rollback taxes was a violation of the automatic stay. In H & H Beverage Distributors, supra, the Third Circuit held that Pennsylvania’s sales tax audit and related correspondence leading up to the issuance of a sales tax assessment did not violate the stay because the audit was necessary to establish whether the Commonwealth had a valid claim against the debtor. If the Commonwealth could not conduct its audit, it could not determine whether there was a tax deficiency, “thereby render[ing] meaningless § 362(b)(9), which expressly permits taxing entities to issue notices of tax deficiency.” H & H Beverage, supra, 850 F.2d at 167. Similarly here, the notice of intent to assess rollback taxes was a necessary preliminary step to the rollback tax assessment and therefore does not violate the automatic stay. Under the same reasoning, the county board proceeding, which in the case of rollback taxes, is part of the assessment process, is a necessary preliminary step to the issuance of a rollback tax assessment. So viewed, a county board proceeding to assess rollback taxes would not violate the automatic stay pursuant to Code § 362(a)(1) even if the cause of action or claim for the taxes arose prior to bankruptcy.
*600 If this case were in the bankruptcy court and if there were monies in the bankruptcy estate, the conclusion that the rollback tax assessment was valid would conclude the matter because the post-petition rollback taxes would most likely be payable as a first priority administrative expense under Code § 503(b)(l)(B)(i). See Equibank, supra, 884 F.2d at 83; Matter of Isley, 104 B.R. 673, 678-79 (Bankr.D.N.J.1989) (lien for New Jersey local property taxes did not arise for tax years subsequent to year in which bankruptcy petition was filed, but taxes for those years would be allowed as priority administrative expenses). In other words, it would not be necessary to deal with the validity of the rollback tax assessment lien. Here, however, the township apparently did not seek payment of its tax claim in the bankruptcy proceeding, and, even if it had, there appear to have been no monies in the estate as the proceeding was converted from a Chapter 11 reorganization to a Chapter 7 liquidation by order of the bankruptcy court. Moreover, the sole asset of the debtor, namely the subject property, is vacant land producing no income, and that sole asset was released to UJB, the assignee of the mortgagee by order of the bankruptcy court. Unless Clinton Township’s rollback tax lien is valid, there appears to be no way for the township to collect the 1990 and 1991 rollback taxes. I therefore turn to the validity of the township’s lien.
C.
N.J.S.A 54:4-23.9 provides that the attachment of the lien for ■ rollback taxes is governed by the procedures for assessing omitted property. N.J.S.A. 54:4-63.20 provides that the lien for taxes on omitted property arises on January 1 of the year in which the judgment of the county board assessing such taxes is rendered. The county board in this case rendered its judgment assessing rollback taxes on August 14, 1992. Thus, the lien for those taxes arose on January 1,1992. As the bankruptcy petition was filed on January 14, 1991, the hen for rollback taxes is presumptively barred by the automatic stay, specifically Code § 362(a)(4). Equi-bank, supra, 884 F.2d at 85; Matter of Henry, supra, 173 B.R. at 880-81; In re Eastern Steel Barrel Corp., supra, 164 B.R. at 479.
*601 Clinton Township asserts, nevertheless, that its hen for rollback taxes is not barred because its hen falls within an exception to the automatic stay. Under Code §§ 362(b)(3) and 546(b) an entity may, post-petition, perfect an interest in property that existed pre-petition.
[SJimpIy stated, if a creditor possesses a prepetition interest in property, and state law establishes a time period for perfection of a lien based upon that interest, the ‘lien does not lose its preferred standing by reason of the fact that it [is] not perfected until after the commencement of bankruptcy’ so long as it is perfected within the time period established by state law. Poly Industries, Inc. v. Mozley, 362 F.2d 453, 457 (9th Cir.), cert. denied, 385 U.S. 958, 87 S.Ct. 393, 17 L.Ed.2d 304 (1966). The relatively narrow purpose of this exception is to ‘protect, in spite of the surprise intervention of [the] bankruptcy petition, those whom State law protects’ by allowing them to perfect an interest they obtained before the bankruptcy proceedings began. H.R.Rep. No. 595, 95th Cong., 1st Sess. 371, reprinted in 1978 U.S.Code Cong. & Admin.News 6327; S.Rep. No. 989, 95th Cong., 2d Sess. 86, reprinted, in 1978 U.S.Code Cong. & Admin.News 5872.
[In re Parr Meadows Racing Ass’n, Inc., 880 F.2d 1540, 1546 (2nd Cir.1989), cert. denied, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) ].
A typical example of a hen allowed under Code § 362(b)(3) and Code § 546(b) would be a U.C.C. “perfected security interest [that] relates back to either the filing of a financing statement or the date that the security interest attaches.” Makoroff v. City of Lockport, N.Y., 916 F.2d 890, 892 (3rd Cir.1990), cert. denied, 499 U.S. 983, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991).
Relying on this exception, the Fourth Circuit concluded in Maryland Nat’l Bank v. Mayor and City Council of Baltimore, 723 F.2d 1138 (4th Cir.1983), that the City of Baltimore had a pre-petition interest in city real estate taxes although the hen for those taxes did not arise until after the petition in bankruptcy was filed. According to that court, the tax lien:
was only the last — not the first — step required to perfect the State’s long-standing interest in the real property in question, and a step which, under Maryland law, no entity could prevent. The City was entitled to that perfection under § 546(b) of the Bankruptcy Code when [the lien date] came around, and, thus, entitled to the superiority which the then arising lien afforded.
[Maryland Nat’l Bank, supra, 723 F.2d at 1143-44.]
The Third Circuit squarely rejected this perpetual interest theory in Equibank, supra. The court held that the exception for the post-petition perfection of pre-petition interests in property *602 should be narrowly construed and applied “only to cases in which an interest is created prior to bankruptcy and its post-petition perfection relates back, as a matter of law, to the date of its creation.” Equibank, supra, 884 F.2d at 85. According to the court, Congress intended that the automatic stay apply to all entities including governmental entities. Adoption of the ever-present interest theory of the Fourth Circuit would have the effect of creating “ ‘a rotating exception, which, every [year], would add another lien at the front of the priority line, enabling [the state] to effectively collect on all its claims as if no bankruptcy petition had ever been filed.’ ” Id. at 86 (quoting Parr Meadows, supra, 880 F.2d at 1547).
Clinton Township recognizes that the Third Circuit has rejected the perpetual interest theory but asserts that rollback taxes are different. According to the township, it had a prepetition interest in Alpha-Bella’s property because rollback taxes result from a tax deferral. That is, under the Farmland Assessment Act real property taxes that would otherwise be due are deferred and eventually forgiven provided the property continues to qualify for farmland assessment. See N.J.S.A. 54:4-23.2, -23.7, and -23.8. According to the township, its interest in the property arose on January 1,1990 and January 1,1991 when the taxes were originally deferred for the 1990 and 1991 tax years. The subsequent steps to impose rollback taxes for the 1990 and 1991 tax years were simply further steps to perfect the township’s interest in the property.
The township is correct that farmland assessment has been characterized as a deferral of local property taxes that would otherwise be due. Franklin Tp. v. Environmental Protection Dep’t, 8 N.J.Tax 559, 564 (1986). Although the obligation to pay rollback taxes accrues when there is a change in use within three years of the original deferral, the obligation to pay rollback taxes arises from the tax deferral. Id. at 564-65. Moreover, the township is correct that had the property been subject to a “regular” assessment, i.e., not a farmland assessment, the town *603 ship’s lien for the 1990 and 1991 taxes would have arisen on January 1, 1990 and 1991, respectively. N.J.S.A. 54:5 — 6.[6]
However, the township’s position is inconsistent with the applicable bankruptcy law in the Third Circuit. In Makoroff v. City of Lockport, N.Y., supra, the Third Circuit held that, for purposes of determining whether a local taxing district has a pre-petition interest in a debtor’s real property, the determining factor is the point in time at which the governmental unit “take[s] the affirmative acts necessary to fix the amount of the tax due and to acquire a lien to the extent of that amount.” Makoroff, supra, 916 F.2d at 894. For purposes of the city taxes imposed under New York law that were at issue in Makoroff, that point was the date on which a notice of tax assessment was published, which was also the statutory lien date. This date was to be distinguished from the assessment date under New York law, which, in the Third Circuit’s view, was simply the date on which the identity of the taxpayer and the value of the property are established. Id. at 895. As of the assessment date, the taxing district had an “expectation” that the taxes would be collected, but that expectation did not rise to the level of an interest in property because neither the amount of the tax nor a perfectible lien was established on the assessment date. Id. at 896. The court added that, under the New York statutes, the lien did not relate back to the assessment date. Id. at 895.
The deferral of “regular” local property taxes as the result of a farmland assessment does not create an interest in property. As of the date when the regular taxes in this case were deferred (January 1, 1990 and January 1, 1991), the township considered the property to be farm qualified and had no “expectation” that the “regular” taxes would become due. It was not until the notice of intent to assess rollback taxes was issued that the township had an expectation that rollback taxes might be applicable. It was not until the county board issued its judgment on August 14, 1992 *604 assessing rollback taxes that the township and county board had “performed the statutory acts necessary to give rise to a perfectible lien.” Makoroff, supra, 916 F.2d at 896. On the other hand, as distinct from the New York statutes at issue in Makorojf, under N.J.S.A. 54:4-63.20 the township’s lien for rollback taxes related back to January 1, 1992. By operation of the statutory relation back provision, the township’s interest in the property existed as of January 1, 1992. See Matter of Yobe Elec., Inc., 30 B.R. 114 (W.D.Pa., 1983), aff'd per curiam, 728 F.2d 207 (3rd Cir.1984) (under Pennsylvania law mechanics Ken arises when materials are furnished; thus post-petition filing of notice of intention to file mechanic’s Ken was excepted from automatic stay under Code § 362(b)(3) and Code § 546(b) when creditor furnished materials prior to bankruptcy filing). As the township’s interest in the property for roUback taxes arose no earlier than January 1, 1992, the township did not have a pre-petition interest in the debtor’s property. Thus Code § 326(b)(3) does not save the township’s Ken.
The enactment of L.1994, c. 32 does not affect the above conclusion. Section five of that act amends N.J.S.A. 54:5-6 to read:
Taxes on lands shall be a continuous lien on the land on which they are assessed, and all subsequent taxes, interest, penalties and costs of collection which thereafter fall due or accrue shall be added to and be a part of such initial lien.
The purpose of the provision appears to be to circumvent the federal bankruptcy court decisions which have held that under New Jersey law post-petition local property taxes do not become Kens on the property. See sponsor’s statement to S. 599 (1994). Chapter 32 was enacted and became effective on May 12, 1994. L.1994, c. 32, § 18.
There is a presumption “ ‘against applying statutes affecting substantive rights, liabiKties, or duties to conduct arising before their enactment.’ ” Richardson v. Director, Div. of Taxation, 14 N.J.Tax 356, 364 (1994), (quoting Landgraf v. USI Film Products, -U.S. -,-, 114 S.Ct. 1483, 1504, 128 L.Ed.2d 229 (1994)). To overcome the presumption against retroactive appKcation of statutes, there must be an “unequivocal expression” *605 by the Legislature of an intent to apply the statute retroactively. Id. at 365 (quoting Phillips v. Curiale, 128 N.J. 608, 617, 608 A.2d 895 (1992)). There is no indication in L.1994, c. 32 that the Legislature intended that the statute operate retroactively. Section 5 of L.1994, c. 32 creating a continuous lien for local property taxes affects substantive rights. If applied to liens that would otherwise have arisen in 1990 and 1991, the amendment would “ ‘attach[ ] new legal consequences to events, completed before its enactment.’ ” Id. at 368 (quoting Landgraf, supra, — U.S. at -, 114 S.Ct. at 1499). The statute therefore does not apply retroactively to tax liens that, according to defendant, arose in 1990 and 1991, three and four years before the statute’s effective date.
Moreover, even if the amended statute were given retroactive effect, it is questionable that it would apply in this case because the amendment deals with the lien date under N.J.S.A 54:5-6, while the lien for rollback taxes is imposed pursuant to N.J.S.A 54:4-63.20. It is difficult to conceive of a continuous lien for rollback taxes because those taxes come into existence only if there is a change in use and a rollback tax assessment is issued. N.J.S.A. 54:4-23.8 and -23.9; N.J.S.A. 54:4-63.15.
Although one court has held to the contrary, it cannot plausibly be maintained that the township’s lien sprang into existence when the bankruptcy court vacated the automatic stay to permit UJB to proceed with its foreclosure judgment and sale of the property. Cf. Alliance R.R. Community Credit Union v. County of Box Butte, 243 Neb. 840, 503 N.W.2d 191 (1993) (automatic stay merely suspended county’s lien for real property taxes; once property was sold by debtor to mortgagee, property was removed from bankruptcy estate and statutory liens became effective and could be enforced). The Third Circuit has repeatedly held that acts in violation of the automatic stay are void ab initio, not merely voidable. Raymark Indus. Inc. v. Lai, 973 F.2d 1125, 1131 (3rd Cir.1992); Maritime Elec. Co. v. United Jersey Bank, supra, 959 F.2d at 1206; In re Ward, 837 F.2d 124, 126 (3rd Cir.1988). See also In re Formisano, 148 B.R. 217, 222, 224 *606 (Bankr.D.N.J.1992) (“Void in the strict sense means that ah instrument or transaction is nugatory and ineffectual so that nothing can cure it; voidable exists when an imperfection or defect can be cured by the act or confirmation of him who could take advantage of it”). The vacating of the automatic stay to permit UJB to proceed with its foreclosure action did not cure the township’s defective lien because the township had no lien to be cured. Matter of Cappadonna, supra, 154 B.R. at 641 (foreclosure judgment rendered while automatic stay was in effect could not be confirmed nunc pro tunc once bankruptcy case was dismissed; as foreclosure judgment was void ab initio, there was no judgment to confirm).
In sum, the township’s lien for rollback taxes is void and nonexistent because it would have arisen during the period of the automatic stay and is thus barred by Code § 362(a)(4). The exception to the automatic stay for the perfection of interests in property that existed pre-petition does not save the township’s lien because the township had no interest in the property prior to the filing of the bankruptcy petition on January 14, 1991. Thus, although the rollback tax assessment itself is not rendered void by the automatic stay, the township has no ostensible means to enforce collection of the taxes.
III.
Unless UJB agrees to pay, the only avenue that may be open to the township is to petition the bankruptcy court to annul the automatic stay under Code § 362(d).[7] Annulling the stay, as opposed to vacating or terminating it, has been held to grant retroactive relief and validate an act that would otherwise be void. Sikes v. Global Marine, Inc., 881 F.2d 176, 179 (5th Cir.1989); In re Formisano, supra, 148 B.R. at 224-25 (tax sale held in violation of automatic stay rendered valid by retroactive annulment of stay). *607 Under facts quite similar to those presented here, the Bankruptcy Court for the District of New Jersey annulled the automatic stay at the request of a municipality to permit creation of the town’s lien for post-petition real estate taxes. Matter of Henry, supra.
Absent UJB’s voluntary payment or annulment of the automatic stay by the bankruptcy court, the township is barred from collecting the 1990 and 1991 rollback taxes from UJB.
Nor can the township collect the rollback taxes from Alpha-Bella. Although Alpha-Bella was the owner of the property when the rollback taxes were assessed, it has no interest in the property at this point. Its equity of redemption was foreclosed ten days after the sheriffs sale or when the sheriffs deed was delivered on February 25,1994. R. 4:65-5; Carteret Savings and Loan Ass’n, F.A. v. Davis, 105 N.J. 344, 349, 521 A.2d 831 (1987); Hardyston Nat’l Bank v. Tartamella, 56 N.J. 508, 513, 267 A.2d 495 (1970). Real property taxes are a lien against the real estate, not a personal obligation of the landowner. Newark v. Central & Lafayette Realty Co., Inc., 150 N.J.Super. 18, 21, 374 A.2d 504 (App.Div.), certif. denied, 75 N.J. 528, 384 A.2d 508 (1977); Freehold Office Park v. Freehold Tp., 12 N.J.Tax 433, 440-41 (1992). Accordingly, Alpha-Bella has no continuing obligation for the taxes.
IV.
In the event that the bankruptcy court annuls the automatic stay so as to permit the township to enforce its rollback tax assessment, brief mention should be made of plaintiffs remaining arguments.
Plaintiff asserts that the township is barred by principles of estoppel from collecting rollback taxes because the township failed to assert its rights in the bankruptcy court proceeding, during which UJB could have taken steps to protect its interests. The argument is not convincing. The doctrine of estoppel is not lightly invoked against governmental entities. Airwork Serv. Div. v. Director, Div. of Taxation, 97 N.J. 290, 297-99, 478 A.2d 729 *608 (1984) , cert denied, 471 U.S. 1127, 105 S.Ct 2662, 86 L.Ed.2d 278 (1985) . If the township had a tax claim that was otherwise valid under state and federal law, the fact that it failed to present its claim in bankruptcy court would not estop it from collecting the tax, especially when all that UJB can point to is the township’s inaction in the bankruptcy court. See id. at 299, 478 A.2d 729.
Moreover, UJB does not begin to make out a claim for estoppel even assuming a private party were involved. Specifically, UJB fails to establish a known misrepresentation of fact by the township, an intent that UJB rely on any such misrepresentation, reasonable reliance, or a detriment attributable to such reliance. See Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339, 403 A.2d 880 (1979). In particular, UJB suffered no detriment as a result of the township’s failure to raise its claims in the bankruptcy court. The township’s tax claims most likely could not have been paid as administrative expenses of the estate because it is doubtful that there were any monies in the estate apart from the subject property. See Matter of Henry, supra. In fact, had the township raised its tax claims in the bankruptcy court, it is quite possible that the court would have annulled the stay to permit the township to collect the taxes from UJB. Ibid. Far from suffering a detriment from the township’s failure to raise its claim in the bankruptcy court, UJB appears to have benefitted from the township’s inaction.
Plaintiff asserts that Alpha-Bella’s failure to farm the property during the pendency of the bankruptcy proceeding should not be deemed a change in use because the township failed to apply to the bankruptcy court for relief from the automatic stay. In the .absence of such an application, according to plaintiff, the lack of farming should be treated as a decision to leave the land fallow, i.e., a temporary nonuse that is part of a crop rotation program and thus not a cessation of farming. In response, defendant asserts that, under the decided cases, a cessation of farming constitutes a change in use and that neither the New Jersey Constitution nor the Farmland Assessment Act provides for an exception when a taxpayer is in bankruptcy.
*609 I agree with the township. Case law is clear that a failure to use previously qualified farmland for agricultural or horticultural use constitutes a change in use and that a cessation of farming is a nonagricultural use. South Brunswick Tp. v. Bellemead Dev. Corp., 8 N.J.Tax 616, 624-25 (1987); Angelini v. Upper Freehold Tp., 8 N.J.Tax 644, 650 (1987); Burlington Tp. v. Messer, 8 N.J.Tax 274 (1986), aff'd o.b. per curiam 9 N.J.Tax 634 (App.Div. 1987); Environmental Protection Dept. v. Franklin Tp., 181 N.J.Super 309, 3 N.J.Tax 105, 437 A.2d 353 (1981), aff'd o.b. per curiam, 5 N.J.Tax 476 (App.Div.1983). A failure to use previously qualifying land for agricultural activities cannot be equated with a decision to leave land “fallow for a period of time in order to improve the soil for subsequent crops.” Hamilton Tp. v. Lyons Estate, 8 N.J.Tax 112, 119 (1986). Here, there was plainly a cessation of agricultural use, not a decision to leave the land fallow.
The automatic stay would not inhibit a debtor from continuing to farm during the pendency of a bankruptcy case. Accordingly, there is no authority for plaintiffs argument that a cessation of farming should bé treated as other than a change in use while an owner of farm property is in bankruptcy.
V.
In conclusion, UJB has standing to pursue this tax appeal. The county board’s notice of intent to invoke rollback taxes was not defective. The judgment of the Hunterdon County Board of Taxation assessing rollback taxes against Alpha-Bella did not violate the automatic stay. Although it was a proceeding against the debtor within the meaning of Code § 362(a)(1), the rollback tax proceeding could not have been commenced before Alpha-Bella filed its petition in bankruptcy. Nor did the township’s claim for rollback taxes arise before the filing of the bankruptcy petition. While the assessment was an act to create a hen within the meaning of Code § 362(a)(4), it was excepted from the automatic stay under Code § 362(b)(9) as the equivalent of a notice of tax deficiency. On the other hand, the township’s hen for rollback *610 taxes, which would otherwise have arisen on January 1, 1992, is void ab initio under Code § 362(a)(4). The township did not have a pre-petition interest in the subject property within the meaning of Code § 362(b)(3) even though farmland assessment may defer the “regular” taxes that would otherwise be due.
As the township has no lien for rollback taxes, it cannot enforce collection of the taxes absent an annulment of the automatic stay, which only the bankruptcy' court can grant. Should the bankruptcy court annul the stay, UJB’s remaining state law arguments in opposition to the imposition of the rollback tax assessment are to no avail.[8]
The court will enter an order consistent with this opinion. A telephone conference call will be scheduled to determine the disposition of the valuation issue.

 By reason of NJ.S.A. 54:51A-3, this court may hear the matter even though the taxes have not been paid.

 In local property tax matters involving a taxpayer's petition to the county board or the filing of a complaint in the Tax Court seeking a reduction in assessment and a refund of tax, the proceeding arguably is not against the debtor. Maritime Elec. Co. Inc. v. United Jersey Bank, 959 F.2d 1194, 1204 (3rd Cir.1991) (" 'The statute does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate.’ ” (quoting St. Croix, supra, 682 F.2d at 448).).

 Disagreeing with Frenville, other federal courts have concluded that a claim arises when the conduct occurs that may later generate a claim or right to payment. See, e.g., Grady v. A.H. Robins Co., Inc., 839 F.2d 198 (4th Cir.), cert. dismissed, 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988). In the Third Circuit, however, Frenville continues to be the law.

 It might be thought that the rollback taxes at issue should be payable by UJB, the secured creditor, under Code § 506(c) on the theory that UJB received a benefit from the township in return for the payment of local property taxes. However, that possibility has been virtually foreclosed by the Third Circuit's decision in In re C.S. Assocs., 29 F.3d 903 (3rd Cir.1994). Cf. In re Eastern Steel Barrel Corp., 175 B.R. 539 (Bankr.D.N.J.1994). In C.S. Associates the court concluded that the general benefits provided to all local property taxpayers by *598 local taxing districts are not the kind of direct benefit to a secured creditor contemplated by Code § 506(c).

 For similar reasons, i.e., that the rollback tax assessment was functionally equivalent to a notice of tax deficiency, the assessment was not barred by Code § 362(a)(6), which prevents "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case.” Moreover, as discussed at pages 607-10 of this opinion, the township's claim for rollback taxes did not arise before the commencement of Alpha-Bella's bankruptcy case on January 14, 1991.

 Effective March 28, 1991, NJ.SA. 54:5-6 was amended to change the lien date to the first day of a municipality's fiscal year. L.1991, c. 175, § 42.

 Alpha-Bella's bankruptcy case may well be closed. Nevertheless, the township may be able to petition the bankruptcy court to reopen the case in order to permit it to seek relief from the automatic stay. Bankr.R. 5010; Bankr.R. 9024.

 Recognizing the problem confronted by municipalities seeking to collect property taxes arising subsequent to the filing of a bankruptcy petition, Congress amended the Bankruptcy Code in 1994 by adding an additional exception to the automatic stay. Under § 401 of the Bankruptcy Reform Act of 1994, P.L. 103-394, Code § 362(b)(18), the filing of a petition in bankruptcy does not stay "the creation or perfection of a statutory lien for an ad valorem property tax imposed by the District of Columbia, or a political subdivision of a State, if such tax comes due after the filing of the petition.” The new exception, which would validate the township's lien for rollback taxes in this case, does not come into play because the Bankruptcy Reform Act became effective on October 22, 1994 and does not apply to bankruptcy cases commenced before the date of enactment. Bankruptcy Reform Act of 1994, P.L. 103-394, Code § 702(b)(2).